No. C-1200

**Joseph Alvino Martinez, Jr., through his next friend, William R. Sprague v. Hawkeye-Security Insurance Company**

(576 P.2d 1017)

Decided April 3, 1978.                    Rehearing denied April 24, 1978.

Holme, Roberts & Owen, Donald K. Bain, Jeffrey A. Chase, for petitioner.

DeMoulin, Anderson, Campbell & Laugesen, Laird Campbell, for respondent.

*En Banc.*

MR. JUSTICE KELLEY delivered the opinion of the Court.

We granted certiorari to consider the question of liability under an insurance contract. Petitioner, Joseph Alvino Martinez, Jr., sued Villa Construction Corporation to recover for personal injuries suffered in a fire in his parents' home. The trial court entered default judgment against Villa, and the petitioner obtained a writ of garnishment against the respondent, Hawkeye-Security Insurance Company, Villa's insurer. Respondent denied liability under Villa's policy. The trial court entered judgment for the petitioner. The court of appeals reversed, 563 P.2d 954 (Colo. App. 1976). We affirm.

In June 1971, the petitioner's family moved into a new home constructed by Villa. Although a certificate of occupancy had been issued, certain items still required repairs and finishing touches. Among these items was a door to the basement that did not latch properly. The petitioner's family moved into the house based on Villa's assurance that it would do the necessary finishing and repair work. Villa had been notified of the problem with the basement door.

In September 1971, petitioner, who was then two years old, pushed the basement door open, entered the basement and was badly burned when gasoline stored in the basement ignited. At that time, Villa was still in the process of completing the repair work.

The trial court found on undisputed evidence that had the door latch been properly installed, petitioner would not have been able to open the door to the basement and, consequently, would not have been injured. The trial court held that the door was not a completed operation because it had not been put to its intended use, which was to keep children out of the basement.

The court of appeals reversed. It rejected the trial court's findings and conclusions and held, as a matter of law, that the petitioner's claims fell within the policy's "completed operations hazard" provision.

This is the first time we have been called upon to interpret a "completed operations hazard" clause.[1] The policy defines "completed operations hazard" as follows:

"'[C]ompleted operations hazard' includes bodily injury and property damage arising out of operations or reliance upon a representation or warranty made at any time with respect thereto, but only if the bodily injury or property damage occurs after such operations have been completed or abandoned and occurs away from premises owned by or rented to the named insured. 'Operations' include materials, parts and equipment furnished in connection therewith. Operations shall be deemed completed at the earliest of the following times:

"(1) when all operations to be performed by or on behalf of the named insured under the contract have been completed,

---

[1] The insurance industry revised its standard "Comprehensive General Liability" insurance policy, effective October 1966. In the revision, the industry redefined the concept of "completed operations hazard." *See* 3 *R. Long, Liability Insurance,* App. B, § 18 at 49 (1969); Henderson, *Insurance Protection Products Liability,* 50 Nebr. L.R. 415 (1971) [hereinafter cited as Henderson]; Tarpey, *The New Comprehensive Policy,* 33 Ins. C.J., 223, 227 (1966). The industry changed the standard form policy to exclude completed operation hazards, making that a separate insurable risk which requires calculation of an additional premium for such coverage. *See Bernstein v. Crystal Bldg. Corp.,* 86 Misc.2d 885, 383 N.Y.S.2d 181 (1976); *see also,* Henderson at 418. Due to the new definition of "completed operations hazard," cases decided prior to the 1966 revision are of little precedential value. *See Abco Tank & Gas Mfg. Co. v. Fed. Ins. Co.,* 550 S.W. 2d 193 (Mo. 1977); *Williams v. New Mexico State Highway Comm.,* 82 N.M. 550, 484 P.2d 770 (Ct. App. 1971).

"(2)   when all operations to be performed by or on behalf of the named insured at the site of the operations have been completed, or

"(3)   when the portion of the work out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principle as a part of the same project.

"*Operations which may require further service or maintenance work, or correction, repair or replacement because of any defect or deficiency, but which are otherwise complete, shall be deemed completed.*" (Emphasis added.)

The coverage portion of the policy shows that Villa paid premiums for comprehensive general liability insurance coverage of carpentry in the construction of detached private residences, both by its own employees and subcontractors. The comprehensive general liability insurance purchased by Villa included "Bodily Injury Liability Coverage."

The policy sold by Hawkeye to Villa *specifically did not cover* "completed operations," because Villa opted not to purchase such coverage. In addition, attached to the policy is an endorsement which reads:

"This endorsement modifies such insurance as is afforded by the provisions of the policy relating to the following:

COMPREHENSIVE GENERAL LIABILITY INSURANCE
EXCLUSION
(Completed Operations Hazard and Products Hazard)

"It is agreed that such insurance as is afforded by the Bodily Injury Liability Coverage and the Property Damage Liability Coverage does not apply to *bodily injury* or *property damage* included within the *Completed Operations Hazard* or the *Products Hazard.*"

The petitioner contends that the policy is ambiguous. He argues that the endorsement quoted above creates the ambiguity because it states that bodily injury coverage for completed operations hazards is *excluded* from the policy even though the basic policy includes coverage for bodily injury. Therefore, the policy should be construed against the insurer and in favor of the insured, Villa. *Coxen v. Western Empire Life Ins. Co.,* 168 Colo. 444, 452 P.2d 16 (1969). Thus, petitioner should recover from Hawkeye. *Jorgensen v. St. Paul Fire & Marine Ins. Co.,* 158 Colo. 466, 408 P.2d 66 (1965). We are not persuaded by this argument.

An insurance policy and an endorsement attached to it must be considered as a single instrument, and they should be construed together in the absence of an internal conflict which cannot be reconciled. *Abco Tank & Gas Mfg. Co. v. Fed. Ins. Co.,* 550 S.W.2d 193 (Mo. 1977); *Coxen, supra.* The endorsement, being the last expression of intent, prevails if the language of the two conflicts. *Abco Tank, supra; see also Roberts v. P. & J. Boat Service, Inc.,* 357 F. Supp. 729 (E.D. La. 1973).

■ It is clear from the policy that in order to have insured the completed operations hazard, such coverage would have to have been specifically purchased. The insured could have done so by initially purchasing such coverage *or,* after purchasing the policy, by having the policy endorsed to delete the exclusion of the completed operations hazard provision and paying an additional premium to the company to cover the increased risk. *See* Henderson.[2] It is clear from the endorsement of this policy that it was Villa's intent not to purchase the completed operations hazard coverage.

■ In interpreting a contract of insurance, courts will not force an ambiguity in order to resolve it against an insurer. *Security Mut. Cas. Co. v. Century Cas. Co.,* 531 F.2d 974 (10th Cir.), *cert. denied,* 429 U.S. 860, 97 S.Ct. 161, 50 L.Ed.2d 137 (1976). An insurer cannot be held liable beyond the scope of risks which have been clearly covered in the insurance policy. *Warner v. Prudential Ins. Co.,* 164 Colo. 35, 433 P.2d 113 (1967). We agree with the other jurisdictions that have considered the question that this endorsement is sufficiently clear and unambiguous to resolve the issue in favor of Hawkeye. *See Roberts v. P. & J., supra; Abco Tank, supra; Williams v. New Mexico State Highway Comm.,* 82 N.M. 550, 484 P.2d 770 (Ct. App. 1971).

We also agree with the majority of courts in other jurisdictions, which, when faced with the contention that the definition of completed operations hazard is ambiguous, have held that the language is clear and unambiguous. *Aetna Cas. & Sur. Co. v. Rothman,* 331 So.2d 81 (La. App. 1976); *Bouchard v. Hartford Acc. & Indem. Co.,* 369 Mass. 846, 343 N.E.2d 372 (1976); *Abco Tank, supra; Kan.-Neb. Nat. Gas Co. v. Hawkeye-Sec. Ins.,* 195 Neb. 658, 240 N.W.2d 28 (1976); *Williams, supra. But see, contra, Nixon v. U.S. Fidelity & Guaranty Co.,* 290 So.2d 26 (Fla. 1973).[3]

■ In *Rothman, supra,* the court said that "[t]he issue here is not ambiguity, confusion or uncertainty resulting from a misleading coverage provision, but rather the failure of the insured to purchase available coverage which the insured did not opt to secure." *See also Kan.-Neb. Nat. Gas Co. v. Hawkeye-Sec. Ins., supra; Casey v. Employers Nat'l Ins. Co.,* 538 S.W.2d 181 (Tex. Civ. App. 1976).

The above statement also holds true for the instant case. We therefore must now determine whether the petitioner's claim falls within the definition of completed operations hazard. If it does, he is without remedy.

---

[2] *Supra* note 1.

[3] The Florida Supreme Court found the clause to be ambiguous because the policy purported to cover injuries from all operations, and the exclusion was entitled "products completed operations." *See* Annot., 58 A.L.R. 3d 1 (1974) and Henderson, *supra* note 1, for other cases with similar reasoning.

If it does not, Hawkeye is liable. We hold that it does.

The trial court held that the door was not completed because it had not been put to its intended use, *i.e.,* as a barrier. The court of appeals reversed, holding that the door was complete because it was put to its intended use, *i.e.,* as a means of access. The distinction is irrelevant. A door is "a movable piece of firm material or structure supported usually along one side and swinging on pivots or hinges . . . by means of which an opening *may be closed or kept open* for passage *into or out* of a . . . room . . . ." *Webster's Third New International Dictionary* (1964) (emphasis added). Therefore, under the policy, a door is complete when it may be put to its intended use. *Cf. W. N. Leslie, Inc. v. Travelers Ins. Co.,* 264 S.C. 408, 215 S.E.2d 448 (1975).

■ The fact that the latching component of the door did not work properly and that Villa had yet to repair the latch, did not render the construction of the house incomplete. The completed operation hazard provision specifically provides that "[o]perations which may require further service or maintenance work or correction, repair or replacement because of any defect or deficiency, but which are otherwise complete, shall be deemed completed."

The judgment is affirmed.

MR. JUSTICE ERICKSON and MR. JUSTICE CARRIGAN do not participate.