951 F.2d 1259
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 Floy HANKE, Plaintiff-Appellant,
v.
AMERICAN FAMILY MUTUAL INS. CO., Defendant-Appellee.
 No. 88-2448.
 United States Court of Appeals, Tenth Circuit.
 Dec. 23, 1991.
 
 Before HOLLOWAY and EBEL, Circuit Judges, and KANE*, Senior District Judge.
 ORDER AND JUDGMENT**
 HOLLOWAY, Circuit Judge.
 
 
 1
 * This case involves an insurance company's denial of a claim for payment of medical benefits. The facts are essentially uncontested. In 1979, plaintiff-appellant Floy Hanke (Hanke), a farmer, had his entire right hip surgically replaced. Three years later he applied to have his health insurance coverage increased from $10,000 to $250,000. His insurance company, American Family Mutual (American Family), the defendant-appellee, received the application and sent Hanke a policy and a declaration sheet for such coverage but with a rider attached which had a stated effective date thereon of March 9, 1982.
 
 
 2
 The rider purported to limit Hanke's coverage for bronchitis or any disease or disorder of the right hip to $10,000. In pertinent part the rider stated:
 
 
 3
 TREATMENT OF FLOY FOR ANY DISEASE OR DISORDER OF THE RIGHT HIP, OR ANY COMPLICATIONS THEREOF SHALL BE LIMITED TO THAT COVERAGE IN FORCE PRIOR TO MARCH 9, 1982, NAMELY A $10,000 MAXIMUM BENEFIT.
 
 
 4
 All other medical conditions were covered up to the requested $250,000. The rider containing this $10,000 coverage limitation also provided that it would not be valid unless signed and returned. Hanke did not comply with this instruction. (Appellee's Brief at 4.) Instead he signed the declaration sheet and returned it to the company. (Deposition of Marty Brewer at 35.) Hanke continued to pay premiums on the policy from 1982 through 1987. (Appellee's Brief at 4.)
 
 
 5
 In the fall of 1985 Hanke fell and injured his right hip again. He entered the hospital on January 21, 1986, and underwent surgery to replace the entire hip prosthesis. On February 27, 1986, he returned to the hospital for treatment of a pulmonary embolism. Thereafter he submitted a claim to American Family for his combined hospital expenses which totaled over $22,000. (Appellant's Brief at 3-4.) Asserting that the embolism was a complication related to the right hip, and that its liability for both the January and February 1986 hospitalizations was limited by the rider, American Family refused to pay any more than the $10,000 limit provided for in the rider.
 
 
 6
 Hanke brought suit claiming that the rider was invalid because it was never signed, that if valid it was ambiguous and could not be construed to apply to his accidental injury, and that in any event his hospitalization for treatment of the embolism did not result from the hip injury. At the end of discovery, American Family filed a motion for summary judgment; Hanke made a request for summary judgment in his response, and the district court treated the request as a formal motion for such relief. The district court entered judgment in American Family's favor, restricting Hanke's recovery to the $10,000 limit provided by the rider. The court held that although American Family had originally made Hanke's signing of the rider a precondition to the formation of the contract, the parties had by their course of conduct implicitly agreed to be bound despite Hanke's failure to sign.
 
 
 7
 Hanke then moved for reconsideration on the grounds that even though the rider might be valid, it only limited coverage of disorders of the right hip. He argued that his injury was not a "disorder" within the meaning of the rider and that the pulmonary embolism was not related to the problems with his right hip. The district judge found that Hanke had failed to demonstrate that the term "disorder" was ambiguous. It also determined that no evidence had been introduced to show that Mr. Hanke's embolism was caused by something other than an injury to the hip. In the court's view the company's liability for the hospitalizations had thus been fully addressed in the order for summary judgment.
 
 
 8
 Hanke appeals. He argues that his failure to sign the rider invalidated the rider, but not the entire contract. American Family was thus obligated to cover medical bills relating to the right hip without regard to the $10,000 limitation in the rider. Secondly, he says that even if the rider is valid, the term "disorder" was ambiguous. Ambiguous terms in insurance contracts must be construed against the insurance company. The rider's terms of "disease or disorder" should be read not to apply to an accidental injury to the hip. Lastly, he argues that American Family bore the burden of proving that the embolism fell within the scope of the rider and that in any event the trial court had improperly granted summary judgment on the issue because American Family had not raised it in its motion.
 
 
 9
 American Family argues that state law did not require a rider to be signed and that in any event a second, corrected rider, which did not include the signature requirement, was sent to Hanke shortly after he received the original.[1] It further maintains Hanke had failed to show that the term "disorder" was ambiguous. Finally it stated that pulmonary embolisms can develop as complications of hip replacement and so, absent proof to the contrary, recovery for the second hospitalization also fell under the $10,000 limit.
 
 II
 
 10
 In reviewing the summary judgment we use the same standard utilized by the trial court. Osgood v. State Farm Mutual Insurance Co., 848 F.2d 141, 143 (10th Cir.1988). We thus review de novo the question whether there is a genuine issue as to any material fact. Fed.R.Civ.P. 56(c). We also review de novo the trial court's rulings on state law. Salve Regina College v. Russell, --- U.S. ----, 111 S.Ct. 1217, 1221 (1991). Here the controlling substantive law is that of Kansas since an insurance contract entered into and to be performed in Kansas is to be interpreted in accordance with Kansas law. See v. United Insurance Co., 230 P.2d 1008, 1011 (Kan.1951). Under that law, on the undisputed facts we cannot agree with the trial court that the rider was valid and binding on Hanke so as to limit his coverage. We therefore reverse.
 
 
 11
 Precedent, as well as the specific language of the documents which American Family sent to Hanke, emphasizes that the various pieces of paper which traditionally accompany an insurance policy together comprise a contract for insurance and are to be construed as a whole. See Lindesmith v. Republic Mutual Fire Insurance Co., 368 P.2d 35, 38 (Kan.1962). See also Home Insurance Co. v. Lomax, 498 P.2d 594, 598 (Ariz.1972), Martinez v. Hawkeye Security Insurance Co., 576 P.2d 1017, 1019 (Colo.1978). In response to Hanke's application for increased insurance, American Family sent him a printed policy setting forth the general provisions of the agreement, a declaration sheet outlining the specific level of coverage provided, and the rider describing the limitations on the coverage of Hanke's right hip.
 
 
 12
 These documents indicate that each separate piece of paper constitutes an integral part of the entire contract. On page 7 the policy states: "This policy, including the endorsements and the attached papers, if any, constitutes the entire contract of insurance." (Appellant's Brief Ex. C.) Four pages later the policy states, "This is not a complete and valid contract without an accompanying Benefit Schedule properly executed." Id. The benefit schedule, or declaration sheet, to which the policy refers includes the statement: "see waiver(s) attached". (Deposition of David Isernhagen Ex. 4.) The policy, declaration sheet, and waiver must all be considered.
 
 
 13
 With respect to the rider, however, Hanke's signature on the rider was necessary for the validity of the rider. The rider itself said, "This waiver is not valid unless the insured acknowledges its receipt and acceptance by returning to the company a copy signed in the space below." Id. The importance of signing the rider was acknowledged by David Isernhagen, American Family's agent. When the documents were transmitted to Hanke, Isernhagen included a memorandum which stated, "Please not [sic] the waivers on Floy for any amount in excess of the old limit ... Also please sign and return the white copy." (Id. Ex. 6.).[2]
 
 
 14
 Despite the failure to execute the rider, Hanke continued to pay premiums as they became due. American Family accepted the payments and admits that Hanke does indeed have a valid health insurance policy. (Plaintiff's Request for Admissions at 1.) What is contested here is the coverage of that policy. Under the normal practice of the insurance industry a customer's application for insurance is considered an offer. Chute v. Old American Insurance Co., 629 P.2d 734, 741 (Kan.App.1981). The offer is accepted by the insurance company when it issues a policy. However, where, as here, the policy issued differs materially from that requested the issued policy is treated as a counteroffer. Jacobson v. Mutual Life Insurance Co. of New York, 271 F.2d 620, 622 (7th Cir.1959). Typically acceptance of the counteroffer is indicated by the insured retaining the policy and paying the first premium. However, assent may be given in any manner the insurer specifies.
 
 
 15
 When American Family agreed to insure Hanke provided that he consent to the waiver of increased coverage on his right hip, the company was actually rejecting Hanke's initial offer and substituting an offer of its own. We can only assume that this is why it required him to sign and return the rider. American Family had complete freedom in choosing acceptable means for Hanke to communicate his assent. Kansas Power and Light Co. v. Burlington Northern, 740 F.2d 780, 787 (10th Cir.1984). It, however, chose to limit the manner in which the offer could be accepted. Hanke was required to sign and return the rider form.
 
 
 16
 American Family would, however, have us construe the rider's quite specific language that it is not valid unless signed and returned to mean that it is valid regardless of whether it is signed and returned. The provisions of insurance contracts are construed against the insurer. Shelter Mutual Insurance Co. v. Williams, 804 P.2d 1374, 1379 (Kan.1991). Those provisions which purport to limit or avoid coverage must be stated in clear and unambiguous language; otherwise, the policy will be liberally construed in favor of the insured. Patron's Mutual Insurance Association v. Harmon, 732 P.2d 741, 746 (Kan.1987). Contrary to the district court's holding, then, Hanke's return of the declaration sheet and payment of premiums cannot be considered a valid acceptance of the terms of American Family's offer. Instead we hold it was a rejection and counteroffer which American Family by its actions accepted.
 
 
 17
 Hanke's counteroffer cannot be merely a proposal to return to the previous lower level of coverage because the premiums which Hanke sent were higher than those owed under the old policy. (Deposition of David Isernhagen Exh. 4) Rather, Hanke's returning the signed declaration sheet, which included the higher levels of coverage, and not returning the signed waiver, rejected the limitations of the waiver and offered to continue to be insured under the higher levels of coverage and increased premiums proposed in his initial application. The insurance company's acceptance of the declaration sheet and four years of corresponding premiums must be considered an acceptance of this counteroffer. Restatement of Contracts (Second) § 69(2) (1979), Crouch v. Marrs, 430 P.2d 204, 209 (Kan.1967).
 
 III
 
 18
 Therefore we hold that the summary judgment for American Family was in error and that Hanke was entitled to summary judgment for coverage without the $10,000 limitation in the unsigned rider; the limitation applicable was as stated in the declaration sheet. While generally an appeal cannot be taken from a denial of summary judgment, we hold that here such an appeal lies and that summary judgment may properly be granted to Hanke for such coverage. American Family was given a full opportunity to respond to Hanke's cross motion for summary judgment and the facts have been fully developed. Accordingly we feel that summary judgment for Hanke as to such coverage is appropriate. 6 J. Moore et. al., Moore's Federal Practice p 56.13 (1988 & Supp.1990), 10 C. Wright, A. Miller, and M. Kane, Federal Practice and Procedure § 2716 (1983), See also Stein v. Oshinsky, 348 F.2d 999, 1002 (2d Cir.1965) (directing entry of dismissal in favor of appellant).[3]
 
 
 19
 Accordingly, the summary judgment for American Family is reversed. The case is remanded with directions that summary judgment be entered for Hanke, adjudging that he is entitled to health insurance coverage as provided in the declaration sheet, without the limitations in the unsigned rider, up to the $250,000 limitation. The district court should then conduct proceedings to determine the payment to which Hanke is entitled, and should consider Hanke's request for prejudgment interest, costs and whether Hanke is entitled to attorney fees pursuant to K.S.A. 40-256 (1986).
 
 
 20
 IT IS SO ORDERED.
 
 
 
 *
 The Honorable John L. Kane, Jr., Senior Judge, United States District Court for the District of Colorado, sitting by designation
 
 
 **
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, res judicata, or collateral estoppel. 10th Cir.R. 36.3
 
 
 [1]
 Although counsel for American Family asserts in its brief that a waiver without the signature requirement was sent to Mr. Hanke shortly after the original, this claim has no support in the record. The only evidence American Family points to is the testimony of its underwriting director that a "corrected" waiver was ultimately prepared. (Deposition of Marty Brewer at 56:11-24). However, this new waiver was not prepared until after this litigation had begun. (Id. at 48.9 and 62.23). It thus could not affect Mr. Hanke's coverage at the time of the claim
 
 
 [2]
 American Family points to portions of Mrs. Hanke's deposition which deal with knowledge of the rider and its limitation. In her deposition Mrs. Hanke stated she had signed the application for the increased insurance coverage; that she had authority to sign any papers; that she did not believe Mr. Hanke was present when she signed the application; that when the insurance policy was received, she "glanced over" the policy, "[n]ot real close," and did see reference to the hip in connection with exclusions
 We are not persuaded that these statements are legally relevant to our issues. In any event, the record is clear that the rider with the exclusion was not signed by Mr. or Mrs. Hanke, and it is his consent or lack of consent to the rider which is controlling.
 
 
 [3]
 Because the unsigned rider does not form a part of the existing contract of insurance between American Family and Hanke, it is not necessary for us to reach the issue of the possible ambiguity of the unsigned rider or the question whether the embolism was a result of the injury to the right hip. Both of Hanke's hospitalizations in early 1986 were covered by Hanke's health insurance to the full $250,000 upper limit of the policy placed in effect by the conduct of the parties