ESSEX INSURANCE COMPANY,
Plaintiff–Counter–Defendant
Appellant,

v.

Crystal VINCENT; Adam Taylor;
Barbara Behrns, Jackie Storm,
Defendants–Appellees,

Williams Street Center, Inc., named as:
Williams Street Center, a Colorado Cor-
poration; Rick E. Mohnssen, Defen-
dants–Counter–Claimants–Appellees,

and

Betty Read Behrns; Darlene Read; Mark
Read; Michael Read; Alexandria Read;
Daniel Read; Shelby Read; Wayne Cel-
lum; Jo Read; Danielle Read; Alex-
andra Read, by and through their moth-
er and next friend, Darlene Read, Defen-
dants.

No. 94–1147.

United States Court of Appeals,
Tenth Circuit.

April 19, 1995.

Donald Lawrence, Jr., Tilly & Graves, P.C., Denver, CO, appearing for appellant, Essex Ins. Co.

John M. Seebohm and Charles A. Lorimer, Tilly & Graves, P.C., Denver, CO, on the briefs, for appellant, Essex Ins. Co.

Teryl R. Gorrell, Moye, Giles, O'Keefe, Vermeire & Gorrell, Denver, CO (Martha E. Cox, with him on the briefs) appearing for appellees Williams Street Center and Rick E. Mohnssen.

Before TACHA and HOLLOWAY, Circuit Judges, and BURRAGE,* District Judge.

TACHA, Circuit Judge.

Plaintiff Essex Insurance Company sought a declaratory judgment to determine the rights and obligations under its insurance contract with defendant Williams Street Center (the Center). Plaintiff claimed that the contract created no duty to defend or indemnify a state court action brought by defendants Shelby Read, Danielle Read, Alexandra Read, Darlene Read, and Betty Read Behrns. The district court granted defendants summary judgment, holding that plaintiff was liable for defending and indemnifying defendants in the state action. We have jurisdiction pursuant to 28 U.S.C. § 1291 and reverse.

## I. BACKGROUND

The facts in this case are undisputed. The Center operates a halfway house in Denver, Colorado. In 1989 it procured an insurance policy from plaintiff. The policy contained general liability and professional liability coverage, as well as a number of exclusions and endorsements.

This policy was in force when Kenneth Staley, a resident of the Center, escaped from the Center and embarked on a crime spree. Staley's spree ended in Fort Worth, Texas, when he, along with two others, took hostages and killed Robert Read.

Mr. Read's family filed suit against the Center in Colorado state court. They alleged that the Center had acted negligently and that its negligence was the proximate cause of Mr. Read's death. Although plaintiff reserved the right to deny coverage for a defense and indemnification, it provided a defense in the state action against the Center. The parties ultimately settled the state law claims.

Plaintiff brought suit under the Declaratory Judgment Act, 28 U.S.C. § 2201, asserting jurisdiction under 28 U.S.C. § 1332. Plaintiff asked the court to enter a declaratory judgment stating that the policy did not require plaintiff to provide a defense or to indemnify the Center in the state court action. The Center counterclaimed for attorney's fees in the federal action. The district court entered summary judgment in favor of defendants and granted them attorney's fees in the case at bar. Plaintiff appeals.

## II. DISCUSSION

"We review the grant of summary judgment de novo, using the same standard applied by the district court." *Universal Money Ctrs., Inc. v. AT & T*, 22 F.3d 1527, 1529 (10th Cir.), *cert. denied,* —— U.S. ——, 115 S.Ct. 655, 130 L.Ed.2d 558 (1994). Summary judgment should be granted by the district court "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). "When applying this standard, we examine the factual record and reasonable inferences therefrom in the light most favor-

---

* The Honorable Michael Burrage, District Judge, United States District Court for the Eastern District of Oklahoma, sitting by designation.

able to the party opposing summary judgment." *Applied Genetics Int'l, Inc. v. First Affiliated Sec., Inc.,* 912 F.2d 1238, 1241 (10th Cir.1990).

In a case in which jurisdiction is founded on diversity, we apply the law of the forum state. *See Broderick Inv. Co. v. Hartford Accident & Indem. Co.,* 954 F.2d 601, 606 (10th Cir.), *cert. denied,* — U.S. —, 113 S.Ct. 189, 121 L.Ed.2d 133 (1992). We review the district court's interpretation of state law de novo. *See Salve Regina College v. Russell,* 499 U.S. 225, 231, 111 S.Ct. 1217, 1221, 113 L.Ed.2d 190 (1991); *Kirchner v. Chattanooga Choo Choo,* 10 F.3d 737, 738 (10th Cir.1993).

A court interprets an insurance contract using traditional principles of contractual interpretation. *See Buell v. Security Gen. Life Ins. Co.,* 987 F.2d 1467, 1469 (10th Cir.) (citing Colorado law), *cert. denied,* 114 S.Ct. 308, 126 L.Ed.2d 255 (1993); *Wota v. Blue Cross and Blue Shield,* 831 P.2d 1307, 1309 (Colo.1992). "Unambiguous provisions of an insurance contract must be construed to give effect to their plain meaning." *American Family Mut. Ins. Co. v. Johnson,* 816 P.2d 952, 953 (Colo.1991). When a provision in the insurance contract is ambiguous, however, "it must be construed against the drafter and in favor of providing coverage to the insured." *Chacon v. American Family Mut. Ins. Co.,* 788 P.2d 748, 750 (Colo.1990); *see also United Bank v. Hartford Accident & Indem. Co.,* 529 F.2d 490, 494 (10th Cir.1976) (applying Colorado law). A policy is ambiguous "when it is reasonably susceptible to more than one meaning." *Ballow v. PHICO Ins. Co.,* 875 P.2d 1354, 1359 (Colo.1993). But courts should not labor to create ambiguities; if the contract is clear, "a court should not rewrite it to arrive at a strained construction." *Republic Ins. Co. v. Jernigan,* 753 P.2d 229, 232 (Colo.1988); *see also Parrish Chiropractic Ctrs. v. Progressive Casualty Ins. Co.,* 874 P.2d 1049, 1055 (Colo.1994).

In this case, plaintiff argues that its obligation to defend and indemnify the Center in the underlying suit is negated by an exclusion in the policy. "To benefit from an exclusionary provision in a particular contract of insurance the insurer must establish that the exemption claimed applies in the particular case and that the exclusions are not subject to any other reasonable interpretations." *Johnson,* 816 P.2d at 953. The exclusion in the Center's policy reads as follows:

**Assault and Battery Exclusion:**

It is agreed that the insurance does not apply to bodily injury or property damage arising out of assault and battery or out of any act or omission in connection with the prevention or suppression of such acts, whether caused by or at the instigation or direction of the insured, his employees, patrons or any other person.

The district court found that this provision excluded coverage for "acts of negligence regarding the prevention or suppression of" conduct similar to that alleged in the underlying action. On appeal, there appears to be little question that the assault and battery exclusion, standing alone, would bar coverage for the underlying suit. Instead, defendants claim that this exclusion, when read in conjunction with two other provisions of the contract, make the operation of this exclusion ambiguous.

First, defendants contend that the professional liability coverage provision conflicts with the assault and battery exclusion. The professional liability clause states:

**COVERAGE P. PROFESSIONAL LIABILITY**

The Company [plaintiff] will pay on behalf of the INSURED [the Center] all sums which the INSURED shall become legally obligated to pay as DAMAGES because of injury arising out of any negligent act, error or omission in rendering or failure to render professional services, during the policy period, of the type described in the Description of Hazards shown above, whether committed by the INSURED or by any person for whom the INSURED is legally responsible.

The Center claims that the broad coverage established by this provision—that plaintiff will pay for *all* sums resulting from professional liability—conflicts with the assault and

battery exclusion.[1] According to defendants, this alleged conflict creates an ambiguity requiring the court to construe the contract in favor of the insured. But if the contract clearly exempts coverage of assaults or batteries, plaintiff has no duty to defend or indemnify.

" 'In ascertaining whether certain provisions of a document are ambiguous, the instrument's language must be examined and construed in harmony with the plain and generally accepted meaning of the words employed, and reference must be made to all the provisions of the agreement.' " *Kane v. Royal Ins. Co. of Am.*, 768 P.2d 678, 680 (Colo.1989) (quoting *Radiology Professional Corp. v. Trinidad Area Health Ass'n, Inc.*, 577 P.2d 748, 750 (Colo.1978)). Reading the policy as a whole, we find the policy to be unambiguous. Although the professional liability paragraph states that plaintiff will pay for all damages, its function is only to lay out the policy's coverage scheme in general terms. In the section preceding the professional liability paragraph, the policy states that coverage is "subject to the limits of the liability of [the] insurance as set forth in the declarations and the exclusions, conditions and other terms of this policy." The professional liability policy lists a number of exclusions on the same page as the liability provision. Thus, it is clear from the face of the policy that the general liability provision is subject to exceptions, such as the assault and battery exclusion.

In short, this case does not involve a conflict between two exclusions contained in the same policy. *Cf. Simon v. Shelter General Ins. Co.*, 842 P.2d 236, 240 (Colo.1992). Instead, it merely includes broad liability coverage which is narrowed by some enumerated exclusions. We will therefore apply the assault and battery exclusion barring some other ambiguity.

We next turn to defendants' second contention. When the Center originally purchased the policy, it included the following exclusion:

*HIRING/SUPERVISION EXCLUSION*

IT IS UNDERSTOOD AND AGREED THAT CLAIMS, ACCUSATIONS, OR CHARGES OF NEGLIGENT HIRING, PLACEMENT, TRAINING OR SUPERVISION ARISING FROM ACTUAL OR ALLEGED ASSAULT OR BATTERY ARE NOT COVERED AND NO DUTY TO DEFEND ANY INSURED FROM SUCH CLAIMS, ACCUSATIONS OR CHARGES IS PROVIDED.

On May 19, 1989, the parties added to the policy an endorsement deleting this exclusion. Defendants claim that deletion of this provision illustrates the parties' intent that the Center be covered for claims of negligent supervision arising out of an assault and battery.

■ "An insurance policy and an endorsement attached to it must be considered as a single instrument, and they should be construed together in the absence of an internal conflict which cannot be reconciled." *Martinez v. Hawkeye–Security Ins. Co.*, 195 Colo. 184, 576 P.2d 1017, 1019 (1978). In general, though, "when a conflict in an insurance contract arises between provisions contained in the body of the policy and provisions contained in an endorsement to that policy, the endorsement provisions prevail." *Simon*, 842 P.2d at 241.

■ No such conflict exists here. The endorsement includes a provision stating that "[n]othing [in the endorsement] shall be held to vary, alter, waive or extend any of the terms, conditions, provisions, agreements or limitations of the above mentioned Policy, other than as … stated." In other words, the other provisions of the policy remain in full force, including the assault and battery exclusion.

Defendants also argue that the deletion of this provision reveals the parties' intent for coverage, thereby creating an ambiguity. Of course, endorsement provisions often prevail over other provisions "because [it] represents the last expression of intent of the contracting parties." *Simon*, 842 P.2d at 241. But here we see no clear intent from the deletion of this provision. The intent could have been

---

1. The underlying action arose out of acts of professional negligence by the Center. Barring the operation of the assault and battery exclusion, the professional liability provision would normally provide coverage for such a claim.

to provide coverage in these circumstances, as defendants suggest. But the parties may also have deleted the provision for any number·of other reasons. For instance, it is just as likely that plaintiff agreed to the endorsement because the policy still contained the assault and battery exclusion. The important point is that the endorsement does not clearly express any intent of the parties that conflicts with the other provisions of the policy. Because there is no direct conflict, we will enforce the policy as written.

## III. CONCLUSION

The policy unambiguously excludes from coverage assaults and batteries arising out of negligent supervision. As such, the Center was not entitled to a defense or to be indemnified in the underlying action. We therefore **REVERSE** the district court's order granting defendants summary judgment and **REMAND** for the district court to enter partial summary judgment for plaintiff. Defendants are entitled to present any defenses relevant to the remaining issues in this case. Because the Center no longer has a judgment against plaintiff, we **VACATE** the award of attorney's fees and **REMAND** for further proceedings consistent with this opinion.