April 12, 2022

**Supreme Court**

No. 2020-173-Appeal.
(PC 17-1288)

Steven Dulong  :

v.  :

Merrimack Mutual Fire Insurance  :
Company d/b/a The Andover
Companies.

NOTICE:  This opinion is subject to formal revision before publication in the Rhode Island Reporter.  Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone (401) 222-3258 or Email opinionanalyst@courts.ri.gov, of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Steven Dulong        :

v.        :

Merrimack Mutual Fire Insurance   :
   Company d/b/a The Andover
      Companies.

Present: Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ.

**O P I N I O N**

**Chief Justice Suttell, for the Court.** The plaintiff, Steven Dulong, appeals from a Superior Court judgment in favor of the defendant, Merrimack Mutual Fire Insurance Company, doing business as The Andover Companies (Andover), following the denial of his request for declaratory judgment and grant of Andover's motion for summary judgment. On appeal, the plaintiff contends that the hearing justice erred by finding that an endorsement excluding household members other than those explicitly named, as well as entrustment of vehicles to non-named household members, from personal umbrella liability coverage was valid and binding at the time of an accident between a non-named household member and the plaintiff. Accordingly, the plaintiff asks this Court to reverse the hearing justice's entry of summary judgment and denial of declaratory judgment. For the reasons set forth herein, we affirm the judgment of the Superior Court.

# I

## Facts and Travel

We glean the underlying facts of this case from plaintiff's complaint, the submissions of the parties, and the transcript. On or about April 3, 2014, plaintiff and Chelsea Galli were involved in an accident.[1] On the date of the accident, Chelsea was driving a vehicle that was registered to her mother, Perrin Galli, while plaintiff was operating a motorcycle. The plaintiff claims that, as a result of the accident, he suffered property damage and extreme bodily injury, which ultimately led to the amputation of his left leg.

According to plaintiff, after the accident occurred, he asserted claims against Travelers Insurance, the Gallis' primary motor vehicle insurer, and was offered the full policy limits for both bodily injury and property damage. However, plaintiff contends that the Travelers Insurance coverage was insufficient to fully compensate him for his damages. Therefore, plaintiff made an additional claim against both Chelsea and Perrin through an Andover policy that plaintiff asserts provided coverage to the entire Galli family. Andover denied the claim.

Joseph Galli, the named insured, maintained a homeowner's policy with Andover that ran from November 2013 to November 2014 (the 2013 policy), and

---

[1] Chelsea is a member of the Galli family, which also includes Joseph Galli, Perrin Galli, and Lindsay Galli. We refer to members of the Galli family by their first names for purposes of clarity. No disrespect is intended.

which was therefore in effect on the date of the accident in April 2014.[2]  It is undisputed that the 2013 policy provided coverage to some members of the Galli family through a personal umbrella liability endorsement.  However, the heart of this action is the dispute between plaintiff and Andover as to whether Chelsea, the driver of the vehicle involved in the accident, and Perrin, the person to whom the vehicle involved in the accident was registered, were covered by the 2013 policy's personal umbrella liability endorsement or were excluded from coverage by a restricted insured endorsement (RIE).

On October 22, 2012, before the 2012 policy became effective, Joseph executed the RIE.  Andover contends that, because of Chelsea's driving record, it required the RIE as a condition precedent to issuing an umbrella liability endorsement in the 2012 policy.  In relevant part, the RIE provided that:

> "The definition of **insured** is amended to:
>
> "1. **Insured** means:
>
>    "A. You or any **relative** of yours;
>
>    "B. Any other legal entity because of an act or failure to act by you or any **relative**, but only to the extent that they are covered by one of the policies shown on Part B Declarations;

---

[2] Neither plaintiff, Andover, nor the Galli family identified how long Joseph had maintained a policy with Andover prior to the 2013 policy.  However, for our purposes, there are two relevant policies: the 2013 policy, and a policy which ran from November 2012 to November 2013 (the 2012 policy).

"C. With respect to the ownership, maintenance or use of a **car, motorcycle, motor home** or **recreational vehicle**, **'insured'** is amended to include only the following individuals:

"Lindsay, Joseph & Perrin Galli

"* * *

"**EXCLUSIONS**

"The following exclusions are added:

"25. The entrustment by an **insured** of a **car, motorcycle, motor home, recreational vehicle** or any other motorized land conveyance to any household member who is not an **insured** (as listed under **1.C** above)."

Thus, the RIE purports to exclude all but named drivers from coverage related to the use of a car, and to exclude named drivers from coverage for entrustment of the car to a non-named driver. Because the RIE names all but one member of the Galli family—Chelsea—if effective, it would exclude coverage for Chelsea as a driver and coverage for the entrustment of vehicles to Chelsea by other family members.

In addition to the text quoted *supra*, the one-page RIE also provides a space for a policy number, where the policy number found on both the 2012 policy and the 2013 policy was typed in. The RIE also contains a signature line, executed with Joseph's signature. Underneath the signature line is the designation, "Insured's Signature(s)[.]" Whether the RIE was attached to the 2013 policy is a disputed fact; plaintiff contends that it was not.

- 4 -

The declarations pages of the 2013 policy mention the RIE in two places. The third page of the declarations pages contains a section titled "Forms and Endorsements[,]" under which the RIE's form number (H-145 06/96) is listed, within a group of more than twenty other endorsements and forms similarly listed by their form numbers. The fifth page of the declarations pages also references the RIE and does so in more detail. Under the heading "Description of Additional Coverages" there is a subheading, "Personal Umbrella Restricted Insured Endorsement"; under the subheading, the text reads, "Insured definition with respect to an automobile, motorcycle, motorhome, or recreational vehicle includes the following individuals:" and is followed by the names of Joseph, Perrin, and Lindsay.[3]

In March 2017, plaintiff filed a complaint in Providence County Superior Court that was shortly thereafter amended. The amended complaint named Andover as a defendant and sought a declaratory judgment, pursuant to G.L. 1956 § 9-30-1, that the RIE was null and void and that Andover was required to provide plaintiff

---

[3] We note that Lindsay's name is spelled "Lindsey" in the declaration pages of the 2013 policy. However, plaintiff's complaint, the Galli family's answer, and the RIE consistently use the spelling "Lindsay"; accordingly, that is the spelling we adopt throughout this opinion.

with "full insurance coverage/indemnification" for his claims against Chelsea and Perrin.[4]

In January 2019, Andover moved for summary judgment. The hearing justice heard arguments on the motion in March 2020, and, in a bench decision rendered on the same day, granted the motion for summary judgment as to all of plaintiff's claims. The order granting summary judgment was entered on April 27, 2020, and judgment for Andover as to all claims was also entered on the same day. The plaintiff timely appealed the judgment.

## II

### Standard of Review

"This Court will review the grant of a motion for summary judgment *de novo*, employing the same standards and rules used by the hearing justice." *Bank of America, N.A. v. Fay*, 242 A.3d 38, 42 (R.I. 2020) (quoting *Nelson v. Allstate Insurance Company*, 228 A.3d 983, 984-85 (R.I. 2020)). "We will affirm a summary judgment if, after reviewing the admissible evidence in the light most favorable to the nonmoving party, we conclude that no genuine issue of material fact exists and

---

[4] The amended complaint also named the Galli family members as interested parties pursuant to G.L. 1956 § 9-30-11. The Galli family filed an answer to plaintiff's amended complaint in which they requested that plaintiff's claim for declaratory relief be granted; they also cross-claimed against Andover for declaratory judgment, breach of contract, bad faith, and attorneys' fees. However, the Galli family is not involved in this appeal.

that the moving party is entitled to judgment as a matter of law." *Shorr v. Harris*, 248 A.3d 633, 636 (R.I. 2021) (quoting *Midland Funding LLC v. Raposo*, 222 A.3d 484, 486 (R.I. 2019)).

"Furthermore, the nonmoving party bears the burden of proving by competent evidence the existence of a disputed issue of material fact and cannot rest upon mere allegations or denials in the pleadings, mere conclusions or mere legal opinions." *Fay*, 242 A.3d at 42 (quoting *Nelson*, 228 A.3d at 985).  We also note that "[i]t is a fundamental principle that summary judgment is a drastic remedy, and a motion for summary judgment should be dealt with cautiously." *Shorr*, 248 A.3d at 636 (quoting *Lehigh Cement Co. v. Quinn*, 173 A.3d 1272, 1275 (R.I. 2017)).

Additionally, "[a] decision to grant or deny declaratory or injunctive relief is addressed to the sound discretion of the trial justice and will not be disturbed on appeal unless the record demonstrates a clear abuse of discretion or the trial justice committed an error of law." *Kayak Centre at Wickford Cove, LLC v. Town of Narragansett*, 116 A.3d 250, 253 (R.I. 2015) (quoting *Foster Glocester Regional School Building Committee v. Sette*, 996 A.2d 1120, 1124 (R.I. 2010)).

### III

### Discussion

On appeal, plaintiff contends that the hearing justice erred by granting summary judgment in favor of defendant and by denying declaratory judgment.

Specifically, plaintiff argues that the hearing justice erred in finding that (1) the RIE did not need to be attached to the 2013 policy to be valid and effective; (2) the RIE was binding even though it was signed only by the named insured; (3) the RIE was unambiguous; (4) the 2013 policy was a renewal and not a new policy; and (5) the RIE applied to renewal policies and not only to the 2012 policy for which it was issued. We address each claim of error *seriatim*.

**A**

**Attachment of RIE to 2013 Policy**

First, plaintiff argues that the hearing justice erred by finding that the RIE need not have been attached to the 2013 policy to be effective. The plaintiff contends that Rhode Island law requires that all endorsements be attached to their respective insurance policies to be valid. Because the attachment of the RIE to the 2013 policy is a disputed fact, according to plaintiff there is a material disputed fact at issue, and thus summary judgment should not have been granted.

Based on a careful review of the law, we do not agree that attachment is a material fact in this case, because Rhode Island law does not require the attachment of endorsements to their respective policies in every instance, and therefore the RIE could be effective without attachment.

The plaintiff points to *Children's Friend & Service v. St. Paul Fire & Marine Insurance Company*, 893 A.2d 222 (R.I. 2006), in support of his contention that in

Rhode Island endorsements must be attached to their respective policies to be effective. Yet, in *Children's Friend*, this Court considered only the effect of attachment *where an endorsement was not referenced in the policy*. *Children's Friend*, 893 A.2d at 229 ("Our review requires that we first examine the manner in which an insurer in Rhode Island properly incorporates an endorsement into an insurance contract, *when the policy itself makes no specific reference to the endorsement in question*.") (emphasis added). Because the endorsement at issue in *Children's Friend* was not referenced in the language of the larger policy, this Court did not have occasion to consider the proper method of effectuating an endorsement when that endorsement *is* referenced in a policy. *See id.* at 228-29. Therefore, although plaintiff insists that *Children's Friend* requires attachment of an endorsement to an underlying insurance policy in all situations, including when the endorsement is referenced in the policy, we disagree, and we decline to extend the holding of *Children's Friend* beyond the factual situation presented therein, where an endorsement was neither referenced in the policy nor attached to it. *See id.*

While plaintiff asserts, and we agree, that other jurisdictions have held that both attachment and reference are necessary for an endorsement to take effect, plaintiff does not cite, and we have not found, any case from a jurisdiction without a statutory requirement for attachment that holds that an endorsement that is referenced in a policy must also be attached to the policy to be effective. *Cf. Twin*

*City Fire Insurance Company v. Terry*, 472 S.W.2d 248, 250 (Ky. 1971) ("It seems plain that the legislative policy in this jurisdiction, as interpreted in previous decisions by this court, requires that all terms of an insurance contract be 'plainly expressed' in the policy itself. This would appear to foreclose the possibility of incorporation by reference as related to insurance policies."). Instead, courts in jurisdictions without statutory attachment requirements, such as our own, have held that both attachment and reference are required in situations where an endorsement was attached to a policy, but was not referenced within that policy. *See, e.g.*, *Georgia International Life Insurance Company v. King*, 172 S.E.2d 167, 169 (Ga. Ct. App. 1969); *Alldredge v. Security Life & Trust Company*, 92 So. 2d 26, 28 (Ala. 1956). Those courts have reasoned that mere attachment without reference calls into question whether an endorsement is truly intended by the parties to form part of the insurance contract. *See Georgia International*, 172 S.E.2d at 169 ("It is clear * * * that the paper on which the insurer relies, a copy of which was physically attached to the policy by it, must also be shown to have been intended as part of the policy * * * before it may be considered[.]"). However, the facts in the case at bar present the opposite scenario.

Here, although attachment is disputed, the 2013 policy clearly contains specific references to the RIE. The RIE is referenced by its form number, "H-145 06/96[,]" within the "Forms and Endorsements" section of the 2013 policy's

declarations pages. The RIE is also referenced under the "Description of Additional Coverages" section of the declarations pages, which lists a "Personal Umbrella Restricted Insured Endorsement[.]" This reference also contains some of the language found on the RIE, followed by a list of the insureds covered "with respect to an automobile," which includes Lindsay, Joseph, and Perrin, and *sub silentio* excludes Chelsea. Additionally, the RIE clearly references the Gallis' policy, as it lists the correct policy number for the 2013 policy and lists the insured Galli family members by name. Those references indicate that the endorsement was intended by both Andover and Joseph as part of the 2013 policy.

Under well-settled law in Rhode Island, "instruments referred to in a written contract may be regarded as incorporated by reference and thus may be considered in the construction of the contract" so long as "the referring language in the contract * * * demonstrate[s] the parties intended to incorporate all or part of the referenced instrument." *Management Capital, L.L.C. v. F.A.F., Inc.*, 209 A.3d 1162, 1174, 1175 (R.I. 2019) (first quoting *Stanley-Bostitch, Inc. v. Regenerative Environmental Equipment Co., Inc.*, 786 A.2d 1063, 1065 (R.I. 2001); then quoting 17A Am. Jur. 2d *Contracts* § 381 (2019)). Therefore, we hold that, when an endorsement is clearly and specifically referenced in the language of an insurance policy, as here, the endorsement is properly incorporated into the policy even without attachment, and thus attachment has no bearing on whether an endorsement incorporated by

- 11 -

reference is valid and effective. Accordingly, the hearing justice did not err in finding that the disputed fact as to whether the RIE was attached to the 2013 policy was immaterial and by granting summary judgment, because the RIE was properly incorporated to the 2013 policy by the clear and specific references to it in that policy's declarations pages.

### B

**Signatures Required to Make the RIE Binding as a Matter of Law**

Second, plaintiff argues that the RIE was not binding and effective because it was not signed by all of the insureds, which, plaintiff contends, is required as a matter of contract law. The plaintiff avers that the "principles of contract law" require that "all intended parties to a joint contract" sign an instrument for the instrument to be binding. The plaintiff, therefore, submits that the RIE was not binding because it was signed only by Joseph and not by the other insureds.

"An insurance policy is contractual in nature." *Nelson*, 228 A.3d at 985 (quoting *Medical Malpractice Joint Underwriting Association of Rhode Island v. Charlesgate Nursing Center, L.P.*, 115 A.3d 998, 1002 (R.I. 2015)). The plaintiff is correct in asserting that general contract principles apply to insurance policies; however, the very authority plaintiff cites to for the proposition that contract law requires all parties to a contract to sign that contract states that "[a] signature on a contract *may* be required by statute, or by an agreement that the contract will not be

- 12 -

binding until it is signed[,]" 17A Am. Jur. 2d *Contracts* § 174 (2016) (emphasis added); it decidedly does not state that signatures are otherwise, or always, required to make an agreement binding. *See id.* The plaintiff does not contend that there was an agreement between Andover and Joseph, as the named insured, that the RIE would not be binding unless it was signed, and the RIE itself nowhere states that a signature is required. *See id.* ("Signature spaces in a form contract do not in and of themselves require that signatures of the parties are a condition precedent to the agreement's enforceability.").

The plaintiff also cites no Rhode Island law, and we have found no such law, which requires that properly incorporated endorsements be signed by *any* party, let alone by a party other than the named insured.[5] *See generally* 2 Steven Plitt et al., *Couch on Insurance* 3d § 18:19 (rev. ed. 2010) (stating that "[t]he manner of making an endorsement is immaterial as long as the intent that it be a part of the contract can be ascertained[,]" and nowhere stating that a signature is required to make an incorporated endorsement valid) (footnote omitted); 11 Richard A. Lord, *Williston on Contracts* § 30:25 (4th ed. 2021) ("As long as the contract makes clear reference to the document and describes it in such terms that its identity may be ascertained

---

[5] We note that there are jurisdictions in which signatures are statutorily required for at least some endorsements. *See, e.g.*, La. Stat. Ann. § 32:900(L) (2011) (requiring that named exclusion forms be signed by the insured, though not by the person being excluded from coverage). However, Rhode Island has no such law.

beyond doubt, the parties to a contract may incorporate * * * a separate * * * document, * * * including a separate document which is unsigned.") (internal citation omitted). Because we hold that the RIE was properly incorporated to the 2013 policy by references to the RIE in that policy's declarations pages, no signatures were required as a matter of law to make the RIE binding. Thus, plaintiff's argument that all insureds were required to sign the RIE to make it effective under contract law is unavailing.

## C

### Ambiguity of RIE

Third, plaintiff submits that the hearing justice erred by finding that the RIE was unambiguous because, plaintiff argues, it was ambiguous in two respects. First, plaintiff asserts that the RIE was ambiguous as to whose signature was needed to make the RIE binding and effective. Second, plaintiff argues that the RIE was ambiguous as to its nature and scope.

As stated *supra*, "[a]n insurance policy is contractual in nature." *Nelson*, 228 A.3d at 985 (quoting *Charlesgate Nursing Center*, 115 A.3d at 1002). "Accordingly, when interpreting the disputed terms of an insurance policy, we must do so in accordance with the rules of construction that govern contracts." *Id.* (quoting *Charlesgate Nursing Center*, 115 A.3d at 1002). "It is well-settled that this Court

- 14 -

shall not depart from the literal language of the policy absent a finding that the policy is ambiguous." *Id.* (quoting *Charlesgate Nursing Center*, 115 A.3d at 1002).

"In order to determine whether the terms of a policy are ambiguous, we give words their plain, ordinary, and usual meaning." *Nelson*, 228 A.3d at 985 (quoting *Charlesgate Nursing Center*, 115 A.3d at 1002). "[T]he test to be applied is not what the insurer intended, but what the ordinary reader * * * would have understood the language to mean." *Progressive Casualty Insurance Co. v. Dias*, 151 A.3d 308, 312 (R.I. 2017) (brackets and deletion omitted) (quoting *Allstate Insurance Co. v. Ahlquist*, 59 A.3d 95, 98 (R.I. 2013)). This Court "shall refrain from engaging in mental gymnastics or from stretching the imagination to read ambiguity into a policy where none is present." *Nelson*, 228 A.3d at 985 (quoting *Charlesgate Nursing Center*, 115 A.3d at 1003).

"When a policy term is found to be ambiguous, this Court has clearly established that 'the policy will be strictly construed in favor of the insured and against the insurer.'" *Charlesgate Nursing Center*, 115 A.3d at 1003 (quoting *Derderian v. Essex Insurance Co.*, 44 A.3d 122, 127 (R.I. 2012)).

The plaintiff contends that the RIE was ambiguous as to whose signature was required to make it binding. The plaintiff asserts that the RIE's signature line designation, which reads "Insured's Signature(s)[,]" is ambiguous because of the word "Insured" and the addition of the "(s)[.]" Specifically, plaintiff argues that,

- 15 -

because the term "insured" is defined in section 1(C) of the RIE to mean Joseph, Perrin, and Lindsay, and because the signature line designation allows for more than one signature because of the "(s)" following the word "Signature[,]" the signature line designation could be understood to require signatures from all of the insureds as defined in section 1(C) of the RIE—specifically, Joseph, Perrin, and Lindsay—and not just Joseph as the named insured. Therefore, plaintiff asserts that the signature line designation is ambiguous and must be construed against Andover, and that, thus, the RIE should be read as requiring signatures from Joseph, Perrin, and Lindsay in order to be effective. According to plaintiff, this ambiguity also renders the 2013 policy ambiguous so that the policy itself must be construed against Andover.

However, as discussed *supra*, in the absence of a statute or an agreement between the parties, signatures are simply not required to give effect to properly incorporated documents, and the RIE was properly incorporated by reference to the 2013 policy. The plaintiff has not argued, and we will not independently find, that an ambiguous signature line designation, if found here, would represent an agreement between the parties that all insureds were required to sign the RIE to make it binding. Thus, even if the signature line designation was construed as anticipating

signatures from Joseph, Perrin, and Lindsay, the RIE would still be effective without those signatures.[6]

Additionally, although plaintiff cites to a case in which an endorsement was found unenforceable because it was unsigned, the endorsement in that instance differs significantly from the RIE here because that endorsement explicitly required a signature in order to be valid and effective. *See Hanke v. American Family Mutual Insurance Co.*, No. 88-2448, 1991 WL 275640, at *3 (10th Cir. Dec. 23, 1991). In *Hanke*, the endorsement indicated that it was "'not valid unless the insured acknowledges its receipt and acceptance by returning to the company a copy signed in the space below[,]'" *id.* at *3, yet the insured did not sign the endorsement, instead signing only on the declarations page of the policy. *Id.* at *1. The court thus found the endorsement invalid because the insured's "signature on the rider was necessary for the validity of the rider" based on the explicit provision in the endorsement requiring a signature. *Id.* at *3. This is in stark contrast to the RIE here, which contains only a signature line with a designation, and no language that indicates that a signature is required for the RIE to take effect.

---

[6] As noted *supra*, other jurisdictions have held that "[s]ignature spaces in a form contract do not in and of themselves require that signatures of the parties are a condition precedent to the agreement's enforceability." 17A Am. Jur. 2d *Contracts* § 174 (citing *Allen v. Ford Motor Co.*, 8 F. Supp. 2d 702 (N.D. Ohio 1998), *aff'd*, 188 F.3d 506 (6th Cir. 1999)).

The plaintiff also argues that the "scope and nature" of the RIE were ambiguous, primarily by contending that Joseph and Perrin did not understand that Chelsea was excluded from coverage under the 2013 policy and that Perrin was also excluded to the extent that she allowed Chelsea to operate her vehicle. However, based on the literal language of the RIE, we cannot agree with plaintiff that the scope and nature of the RIE were ambiguous. In relevant part, the RIE indicated that, "[w]ith respect to the ownership, maintenance or use of a car," the word "insured" was "amended to include only the following individuals: Lindsay, Joseph & Perrin Galli[.]" (Emphasis omitted.) The RIE also stated that there was an "exclusion[]" as to "[t]he entrustment by an insured of a car * * * to any household member who is not an insured (as listed * * * above)." (Emphasis omitted.) The subjective understanding of the parties, which plaintiff relies on for his argument that the RIE is ambiguous, does not change the plain and ordinary meaning of the words used in the RIE. To find that the RIE is ambiguous in its nature and scope would require performing the type of "mental gymnastics" that this Court has consistently rejected. *See Nelson*, 228 A.3d at 985. Accordingly, we hold that the RIE was not ambiguous as to its nature and scope.

## D

## 2013 Policy as a New Policy Instead of a Renewal

Fourth, plaintiff contends that the hearing justice erred by finding that the 2013 policy was a renewal and not a new policy. According to plaintiff, this distinction is important because, if the 2013 policy was in fact a new policy and not a renewal, the RIE, which was executed for the 2012 policy, would not apply to the 2013 policy, and consequently the RIE would not have been effective at the time of the accident. However, as we determined above, the RIE was properly incorporated into the 2013 policy through the references to it on that policy's declarations pages; therefore, we see no reason why the 2013 policy being a new policy instead of a renewal of the 2012 policy would be relevant in determining the RIE's effectiveness at the time of the accident. Thus, even assuming *arguendo* that the 2013 policy should properly be considered a new policy rather than a renewal, plaintiff's argument is unavailing.

## E

## The RIE's Application to Renewals

Finally, the plaintiff argues that, even if the 2013 policy is indeed a renewal, the RIE does not apply to the 2013 policy because the RIE did not facially indicate that it would carry over to subsequent insurance policies beyond the one for which it was originally executed, the 2012 policy. However, the plaintiff cites no law that

requires an endorsement to facially indicate that it will carry over to subsequent policies in order for it to do so.  Also, because we have determined that the RIE was properly incorporated by reference to the 2013 policy, we see no reason why the RIE need facially indicate that it is applicable to future policies to be effective. Accordingly, the hearing justice did not err in finding that the RIE applied to the 2013 policy if it were a renewal policy.

## IV

## Conclusion

For the foregoing reasons, the judgment of the Superior Court is affirmed. The record shall be returned to the Superior Court.



**STATE OF RHODE ISLAND**

**SUPREME COURT – CLERK'S OFFICE**

Licht Judicial Complex
250 Benefit Street
Providence, RI 02903

## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | Steven Dulong v. Merrimack Mutual Fire Insurance Company d/b/a The Andover Companies. |
| **Case Number** | No. 2020-173-Appeal.<br>(PC 17-1288) |
| **Date Opinion Filed** | April 12, 2022 |
| **Justices** | Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ. |
| **Written By** | Chief Justice Paul A. Suttell |
| **Source of Appeal** | Providence County Superior Court |
| **Judicial Officer from Lower Court** | Associate Justice Melissa E. Darigan |
| **Attorney(s) on Appeal** | For Plaintiff:<br><br>Mark A. Fay, Esq. |
| | For Defendant:<br><br>Mark P. Dolan, Esq.<br>Stanley F. Pupecki, Esq.<br>Mark P. Dolan, Jr., Esq. |