484 P.2d 770

Wendell R. WILLIAMS, Sr., Individually and as Personal Representative and Administrator of the Estate of Wendell R. Williams, Jr., Deceased, Irving E. Moore, Personal Representative and Administrator of the Estate of Bret Dean Morris, Deceased, and Louis Morris, Plaintiffs-Appellants,

v.

The NEW MEXICO STATE HIGHWAY COMMISSION a/k/a the New Mexico State Highway Department, Defendant-Appellee.

No. 556.

Court of Appeals of New Mexico.

April 9, 1971.

Richard E. Ransom, William G. Gilstrap, Smith, Ransom & Deaton, Albuquerque, for plaintiffs-appellants.

Leland S. Sedberry, Jr., Peter J. Broullire, III, Modrall, Seymour, Sperling, Roehl & Harris, Albuquerque, for defendant-appellee.

OPINION

DEE C. BLYTHE, District Judge.

This action presents a novel question concerning the "completed operations" hazard of the new form of comprehensive general liability insurance policy.

Plaintiffs brought this action in the District Court of Santa Fe County against the State Highway Commission and others for wrongful death and other damages incurred as a result of an automobile collision caused by the presence on a federal highway of a yearling calf. From a partial summary judgment in favor of the State Highway Commission the plaintiffs appeal. We affirm.

Plaintiffs contend that:

"The Court Erred in Ruling that the Policy of Insurance Owned by the Highway Department did not Afford Coverage for its Negligent Inspection, Maintenance and Repair of the Cattle Guard."

The decision turns upon the coverage afforded by a comprehensive liability insurance policy carried by the Commission, as authorized by § 5–6–19, N.M.S.A.1953 (Repl.Vol.1966), being Laws of 1959, ch. 333, § 2, which provides in part:

"The state, county, city, school district, district, state institution, public agency or public corporation may insure its officers, deputies, assistants, agents and employees against any liability for damages for death, personal injury or property damage resulting from their negligence or carelessness during the course of their service or employment as part of the consideration for such employment, and for such damages resulting from the dangerous or defective condition of public property, which condition is allegedly due to their negligence or carelessness. * * *"

Sections 5–6–20, N.M.S.A.1953 (Repl. Vol.1966) and 5–6–21, N.M.S.A.1953 (Repl.Vol.1966) waive sovereign immunity to the extent of such insurance coverage. See Chavez v. Mountainair School Board, 80 N.M. 450, 457 P.2d 382 (Ct.App.1969).

The issue is not whether the deaths were proximately caused by the Commission's "negligent failure to inspect, repair, and maintain the said fence and cattle guard." The issue is whether the insurance policy carried by the Commission covers this risk. Only insurance coverage on the hazard involved will waive sovereign immunity. Chavez v. Mountainair School Board, supra.

The insurance policy held by the Commission is the so-called revised standard comprehensive general liability insurance policy adopted in 1966 by the insurance industry. Therefore, cases decided before 1966 are of scant use in this case. In fact, the new form of policy, separately and more fully defining "completed operations" and "products," was made necessary by court interpretations of the old forms contrary to underwriting intent. See Cowan, "Completed Operations and Products Liability Insurance Coverage of the New Comprehensive General-Automobile Policy," 1966 Proceedings, Section of Insurance, Negligence and Compensation Law, American Bar Association; 2 Long, The Law of Liability Insurance, § 18, App. B at p. 50 (1970). The questions here involved are of first impression in this jurisdiction. We have been cited to no cases, and have found none ourselves, from other jurisdictions interpreting these provisions of the new form of policy.

The pertinent parts of the policy read:

"B. EXCLUSION — COMPLETED OPERATIONS AND PRODUCTS HAZARD

"It is agreed that such insurance as is afforded by the Bodily Injury Liability Coverage and the Property Damage Liability Coverage does not apply to bodily injury or property damage included within the 'Completed Operations Hazard' or the 'Products Hazard.'
"* * *

DEFINITIONS
"* * *

"'[C]ompleted operations hazard' includes bodily injury and property damage arising out of operations or reliance upon a representation or warranty made at any time with respect thereto, but only if the bodily injury or property damage occurs after such operations have been completed or abandoned and occurs away from premises owned or rented to the named insured.

"'Operations' include materials, parts or equipment furnished in connection therewith. Operations shall be deemed completed at the earliest of the following times:

"1. when all operations to be performed by or on behalf of the named insured under the contract have been completed.

"2. when all operations to be performed by or on behalf of the named insured at the site of the operations have been completed, or

"3. when the portion of the work out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or sub-contractor engaged in performing operations for a principal as a part of the same project.

"*Operations which may require further service or maintenance work, or correction, repair or replacement because of any defect or deficiency, but which are otherwise complete, shall be deemed completed.* (Emphasis ours.)

" * * *

"B. EXCLUSION OF HIGHWAYS

"It is agreed that the policy does not and shall not be construed to cover any liability arising solely from the existence of or condition of highways, streets, roads or other dedicated ways, including bridges, culverts and similar structures appurtenant thereto.

"This exclusion does not apply to accidents arising out of construction, maintenance or repair operations undertaken by or on behalf of the named insured.

" * * *"

■ Putting all these parts of the jigsaw puzzle together, we come to the inevitable conclusion that the installation of the cattle guard in question was a "completed operation" and therefore not covered by the policy of insurance. The cattle guard had "been put to its intended use."

Plaintiffs contend there is an ambiguity in the listing of one of the hazards included in the coverage afforded by the "Comprehensive General Liability Insurance Coverage Part," as follows:

"1. Premises Operations (Show (a) Locations of insured premises owned by, rented to, or controlled by the named insured (b) interest of named insured in such premises and (c) part occupied by

named insured). [After which the following is typed]

"State of New Mexico

"All operations, yards and buildings."

Plaintiffs would construe "all operations" as including not only the Commission's actual operations but those duties imposed by statute. They cite City of Carlsbad v. Northwestern National Insurance Company, 81 N.M. 56, 463 P.2d 32 (1970), as authority for the proposition that the Commission should have performed its statutory duty to regularly inspect and maintain cattle guards.

With this reasoning we cannot agree. Assuming, but not deciding, that the Commission had a statutory duty to maintain the cattle guard in question, we find nothing in the record to indicate that it undertook to do so or, if it did, that the "operation" of doing maintenance work on the cattle guard in some way contributed to the accident in question. The presumption that officials comply with the law mentioned in *City of Carlsbad* is not pertinent to the precise question of whether an operation was in progress at the critical time.

Plaintiffs would avoid the "Exclusion of Highways" endorsement on the ground that cattle guards are not specifically mentioned therein and are not "bridges, culverts [or] similar structures appurtenant" to highways, or at least that this exclusion is ambiguous.

■ We disagree. Cattle guards are common objects in this cattle country. See § 47–13–9, N.M.S.A.1953 (Repl.Vol.1966) of the Herd District Law and § 55–6–11, N.M.S.A.1953 (Vol. 8, pt. 2, Repl.Vol.1962) regarding Obstructions and Injuries to Highway. We can take judicial notice of their nature. Rule 44(d) permits the "court to resort for its aid to appropriate books or documents of reference."

Webster's Third New International Dictionary, 1967, defines a cattle guard as:

"a device consisting of a shallow ditch across which ties or rails are laid far

enough apart to prevent livestock from crossing."

The fact is that a "cattle guard" serves as a bridge and a culvert.

We find no ambiguity in the policy. Its 12 pages of fine print may be hard to read and understand, but it is not ambiguous.

The partial summary judgment in favor of the State Highway Commission should be affirmed.

It is so ordered.

SPIESS, C. J., and HENDLEY, J., concur.