429 S.E.2d 636

Homer A. EGGLESTON, Jr., Plaintiff
Below, Appellant

v.

WEST VIRGINIA DEPARTMENT OF
HIGHWAYS and Greiner Engineering
Sciences, Inc., Defendants Below

West Virginia Department of
Highways, Appellee.

No. 21268.

Supreme Court of Appeals of
West Virginia.

Submitted Jan. 19, 1993.

Decided Feb. 24, 1993.

Dissenting Opinion of Chief Justice
Workman June 4, 1993.

Deborah L. McHenry, Ranson, Ranson & McHenry, G. Patrick Jacobs, Bickley, Jacobs & Barkus, Charleston, for appellant.

Daniel R. Shuda, Janet N. Kawash, Steptoe & Johnson, George Joseph, Legal Div., W. Va. Dept. of Transp., Div. of Highways, Charleston, for appellee.

MILLER, Justice:

Homer A. Eggleston, Jr., appeals from an adverse ruling entered by the Circuit Court of Kanawha County granting summary judgment to the West Virginia Department of Highways (WVDOH) in a personal injury action.[1] The trial court ruled that Mr. Eggleston's complaint was barred by the sovereign immunity from such actions granted to the State of West Virginia pursuant to Section 35 of Article VI of the West Virginia Constitution and W.Va.Code,

17–4–37. The circuit court found that the sovereign immunity defense was available because the WVDOH's liability insurance purchased pursuant to W.Va.Code, 29–12–5 (1986), did not apply to this accident pursuant to *Shrader v. Holland*, 186 W.Va. 687, 414 S.E.2d 448 (1992). We find that Mr. Eggleston's complaint and discovery material contains sufficient facts to come within the liability insurance policy coverage purchased by the WVDOH, at least for purposes of a summary judgment motion. We, therefore, reverse the order of the trial court and remand this case to the Circuit Court of Kanawha County.

### I.

On July 10, 1990, Mr. Eggleston filed a civil action in the Circuit Court of Kanawha County alleging that he suffered injuries in a July 16, 1989, tractor-trailer accident on Interstate 64 between Beckley and Sam Black Church. Mr. Eggleston alleged that his accident was a direct and proximate result of negligence on the part of the WVDOH in designing, constructing, maintaining, and failing to properly warn him of the unsafe nature of the highway. The accident occurred on a recent addition to Interstate 64, on a portion of the highway first opened to public traffic the day before Mr. Eggleston's accident. Mr. Eggleston contends that his accident occurred on a very long, steep grade of Interstate 64 known as the "Sandstone Grade." He further contends that the highway was dangerous and incomplete because several *warning signs meant to be placed prior to* the "Sandstone Grade" descent had not been erected.

The plaintiff's chief complaint is that the highway construction plans called for large warning signs describing the length and degree of the precipitous slope of the road to be posted above I–64 near the top of the grade.[2] These signs were not in place be-

---

**1.** Although this case is styled Homer A. Eggleston, Jr. v. West Virginia Department of Highways and Greiner Engineering Sciences, Inc., Greiner Engineering Sciences, Inc., was voluntarily dismissed from this case by the appellee and is not involved in this proceeding.

**2.** In its brief before this Court, the WVDOH admits that sometime after construction of the highway was begun, but sometime before the highway was completed, plans calling for a large warning sign overhanging the roadway warning of the steepness of the "Sandstone Grade" descent were added to the design plans.

cause the necessary fastening devices had not been procured before the road opened.

## II.

Before we address the issue of insurance policy coverage, it is useful to explain the underlying legal concept that enables the plaintiff to sue the WVDOH. There is no question that it is a state agency and entitled to the constitutional immunity contained in Section 35 of Article VI of the West Virginia Constitution, which states, in part: "The State ... shall never be made a defendant in any court of law or equity[.]" [3]

Furthermore, under W.Va.Code, 17–4–37, there is the command that "[t]he State shall not be made the defendant in any proceeding to recover damages because of the defective construction or condition of any state road or bridge."

However, in W.Va.Code, 29–12–5(a) (1986), the State Board of Risk and Insurance Management is given the "general supervision and control over the insurance of all state property, activities and responsibilities[.]" This section contains the following proviso: "Any policy of insurance purchased or contracted for by the board shall provide that the insurer shall be barred and estopped from relying upon the constitutional immunity of the state of West Virginia against claims or suits[.]"

W.Va.Code, 29–12–5(a) (1986), provides an exception to the State's constitutional immunity found in Section 35 of Article VI of the West Virginia Constitution. It requires the State Board of Risk and Insurance Management to purchase or contract for insurance and requires that such insurance policy "shall provide that the insurer shall be barred and estopped from relying upon the constitutional immunity of the State of West Virginia against claims or suits." In *Pittsburgh Elevator Co. v. West Virginia Board of Regents,* 172 W.Va. 743, 310 S.E.2d 675 (1983), we discussed the effect of W.Va.Code, 29–12–5,[4] as it related to the State's constitutional immunity. In Syllabus Point 2, we stated:

"Suits which seek no recovery from state funds, but rather allege that recovery is sought under and up to the limits of the State's liability insurance coverage, fall outside the traditional constitutional bar to suits against the State."

In other jurisdictions which have a similar type of statutory insurance provision, courts have also reached the result that, insofar as a plaintiff's damage claim is covered by the state's insurance policy barring the assertion of the state's constitutional immunity, the suit may be maintained.[5] *See, e.g., Pigg v. Brockman,* 79

---

The WVDOH does not assert that this large, overhanging warning sign was erected at the time of the plaintiff's accident.

**3.** Section 35 of Article VI states:

"The State of West Virginia shall never be made defendant in any court of law or equity, except the State of West Virginia, including any subdivision thereof, or any municipality therein, or any officer, agent, or employee thereof, may be made defendant in any garnishment or attachment proceeding, as garnishee or suggestee."

Except for the garnishment and attachment exception, which is directed at a state employee's earnings, the chief purpose of the immunity under Section 35 of Article VI is to shield the State from a monetary judgment. *See, e.g., Mellon–Stuart Co. v. Hall,* 178 W.Va. 291, 359 S.E.2d 124 (1987); *Ables v. Mooney,* 164 W.Va. 19, 264 S.E.2d 424 (1979). Thus, we have allowed a writ of mandamus to compel a state official to discharge a nondiscretionary duty. *E.g., Walter v. Ritchie,* 156 W.Va. 98, 191 S.E.2d 275 (1972). In a similar vein, we have said that a declarato-

ry judgment suit does not violate the State's constitutional immunity where it seeks only a declaration of the rights of the parties. *E.g., Farley v. Graney,* 146 W.Va. 22, 119 S.E.2d 833 (1960).

**4.** *Pittsburgh Elevator* cited the previous version of W.Va.Code, 29–12–5, enacted in 1957. The language of that section relevant to this case was unchanged by the 1986 version of the statute.

**5.** Legislatures in other jurisdictions extend sovereign immunity to all cases except those specifically described by statute. There, the state's coverage and its insurance carrier's liability are set by statute. Coverage is not controlled, as here, by the type of language that the state's insurance board may settle upon with its insurance carrier. *See, e.g., Barad v. Jefferson County,* 178 N.W.2d 376 (Iowa 1970); *Pensacola Jr. College v. Montgomery,* 539 So.2d 1153, 1155 n. 1 (Fla.App.1989); *Tripus v. Peterson,* 11 N.J.Super. 282, 78 A.2d 149 (Law Div.1950); 11 *Couch*

Idaho 233, 314 P.2d 609 (1957); *Williams v. New Mexico Highway Comm'n*, 82 N.M. 550, 484 P.2d 770 (App.1971); *McCloud v. City of La Follette*, 38 Tenn.App. 553, 276 S.W.2d 763 (1954).[6]

Our focus is, therefore, whether the insurance policy at issue provides coverage for the type of accident that occurred in this case. Thus, we turn to the language of the policy and our decision in *Shrader v. Holland, supra*.

### III.

The State's insurance policy in this case was a custom designed policy. It was different from the usual insurance policy that is prepared and printed by an insurance company and delivered to the insured, whose only input ordinarily is not as to its language, but as to the amount and type of coverage. The policy herein was typed and regarding the exclusion in question and the exception at issue provides:

> "It is agreed that the insurance afforded under this policy does not apply to the: ownership, maintenance, supervision, operation, use of [*sic*] control of streets, including sidewalks, highways or other public thoroughfares, bridges, tunnels, dams, culverts, storm or sanitary sewers, *but this exclusion does not apply to bodily injury or property damage which arises out of and occurs during the performance or [sic] construction*, street cleaning and repair operations or arises out of the maintenance or use of

sidewalks which abut buildings covered by this policy." (Emphasis added).

In *Shrader v. Holland, supra*, we construed identical language in the WVDOH insurance policy and found two errors. The first error was in the fourth line where the word "of" appears and the second error was in the fourth line from the bottom where the word "or" appears. We identified those errors in *Shrader* through the use of the term *"sic."* This utilization of the term *"sic"* [7] was not the subject of any further comment in *Shrader*. The WVDOH asserts that the clear import of the last *"sic"* is that the phrase must be read "during the performance *of* construction." For purposes of this case, we will assume this to be a correct reading of the phrase.[8]

The plaintiff contends that the language of the policy is ambiguous and, therefore, should be construed strictly against the insurer and liberally in favor of the insured. *See, e.g., Shamblin v. Nationwide Mut. Ins. Co.*, 175 W.Va. 337, 332 S.E.2d 639 (1985); *Marson Coal Co. v. Insurance Co. of State of Pa.*, 158 W.Va. 146, 210 S.E.2d 747 (1974). Whether there is an ambiguity in a contract was discussed in Syllabus Point 1 of *Berkeley County Public Service District v. Vitro Corp. of America*, 152 W.Va. 252, 162 S.E.2d 189 (1968), where we determined that it was a legal issue for court determination:

> "The mere fact that parties do not agree to the construction of a contract does not render it ambiguous. The ques-

---

on *Insurance 2d* § 44:11 (1982); Annot., 68 A.L.R.2d 1437 (1959).

**6.** It appears to be a general rule that a state is immune from liability or suit "for all accidents upon highways resulting from defects, obstructions or nuisances therein, in the absence of a statutory provision to the contrary[.]" 39 Am. Jur.2d *Highways, Streets & Bridges* § 353 (1968). *See also Pittsburgh Elevator v. West Virginia Bd. of Regents*, 172 W.Va. at 748–49 n. 6, 310 S.E.2d at 680–81 n. 6; Annot., 45 A.L.R.3d 875 (1972). For a discussion of varying authority "on the effect of a legislative enactment *authorizing* a governmental unit to purchase liability insurance," see *Longpre v. Joint School Dist. No. 2*, 151 Mont. 345, 348, 443 P.2d 1, 3 (1968). (Emphasis in original).

**7.** The term *"sic"* is defined in Webster's Third New International Dictionary at 2110 (1970), as "intentionally so written—used after a printed word or passage to indicate that it is intended exactly as printed or by an editor to indicate that it exactly reproduces an original."

**8.** In this case, the matter might have been clarified by obtaining someone from the Board of Risk and Insurance Management or the insurance carrier personnel who prepared the policy to state that there was a clerical error. This was not done.

We have corrected clerical errors in a statute when we conclude from the true intent of the legislature that the error is manifest. *See* Syllabus Point 2, *McClanahan v. Putnam County Comm'n*, 174 W.Va. 478, 327 S.E.2d 458 (1985).

tion as to whether a contract is ambiguous is a question of law to be determined by the court."

The parties acknowledge that the controlling language in the policy which allows coverage is "bodily injury or property damage which arises out [of] and occurs during the performance of construction" on a street or highway. In *Shrader v. Holland, supra,* we did not find this language to be ambiguous, although we did not discuss the policy language to any extent except to say: "Under this policy, the third-party plaintiff cannot recover for the general condition of the road on which the accident occurred. However, the third-party plaintiff would be able to make a claim if the accident arose out of repair or maintenance of the road." 186 W.Va. at 689, 414 S.E.2d at 450.

The parties' disagreement over the term "performance [of] construction" can be briefly summarized. The WVDOH claims that it should be construed to mean that there has to be ongoing construction work on the highway at the time the injury occurs. The plaintiff, on the other hand, states that, so long as there is work to be performed on the highway construction project and the injury results from some act or omission under the construction work attributable to the WVDOH, the policy provides coverage.

Neither party cites any case law that defines the term the "performance [of] construction." Both sides refer to *Shrader, supra,* where the term "ongoing construction" was used in describing a situation where a plaintiff might recover under the policy. The difficulty is that the term "ongoing" is not contained in the policy nor did our statement in *Shrader* tie "ongoing" to the policy phrase "performance [of] construction":

"[T]he third-party plaintiff would be able to make a claim if the accident arose out of repair or maintenance of the road. The third-party plaintiffs have provided absolutely no evidence that the road was under repair. In fact, their initial complaints described general road conditions and alleged *no ongoing* construction or

repairs. Furthermore, discovery revealed no evidence of ongoing construction or repairs. Therefore, the circuit court appropriately granted summary judgment based on sovereign immunity." 186 W.Va. at 689, 414 S.E.2d at 450. (Footnote omitted; emphasis added).

When we turn to a dictionary definition of the word "construction," it appears to include the completion of the entire project. In Webster's Third New International Dictionary at 489, "construction" is defined as "the act of putting parts together to form a complete integrated object." In II(C) *The Oxford English Dictionary* at 880 (1970), "construction" is stated as "[t]he action of framing, devising, or forming, by putting together of parts; erection, building." Neither definition suggests that "construction" ends before the thing constructed is complete.

Although we have not previously had the opportunity to examine this term, other jurisdictions have done so. The Supreme Court of Iowa in *Olney v. Hutt,* 251 Iowa 1379, 1387, 105 N.W.2d 515, 520 (1960), has stated:

"In *Preston v. Dubuque and Pacific Railroad Co.,* 11 Iowa 15, this court said: '* * * it being understood by the word construction as here used, more is meant than the mere making of the road bed. *The construction of the road implies its preparation and readiness for use* [.]' " (Emphasis added).

*See also Jensen v. Dorr,* 159 Cal. 742, 745–46, 116 P. 553, 555 (1911); *Goben v. Akin,* 208 Iowa 1354, 227 N.W. 400 (1929); *McDowell v. Blue Ridge & A. Ry. Co.,* 144 N.C. 721, 57 S.E. 520 (1907). The court in *Carlson v. Kitsap County,* 124 Wash. 155, 158, 213 P. 930, 931–32 (1923), stated that "in its common use 'construction' means the creation of something new, rather than the repair or improvement of something already existing[.]" Similarly, in *National Charity League, Inc. v. County of Los Angeles,* 164 Cal.App.2d 241, 248, 330 P.2d 666, 670 (1958), this statement was made: "We are satisfied ... that the phrase 'in the course of construction' applies to a building from the time of its commence-

ment to its completion." Finally, in *Hollis v. Erwin*, 237 Ark. 605, 613, 374 S.W.2d 828, 833 (1964), the court considered what constituted the construction of a hospital and concluded that it was "more than a mere building of four walls and a roof," and that the "equipping" of the hospital was essential to its construction. *See generally* 23 A.L.R.3d 1282 § 17 (1969); 8A Words & Phrases *Construct; Construction* 470, *et seq.,* and *Construction Work* 499, *et seq.*

The term "performance" carries a similar connotation when used, as in the policy, in combination with the word "construction." Webster's Third New International Dictionary at 1678 defines "performance" as "the act or process of carrying out something." Much the same terminology is found in VII(N–Poy), *The Oxford English Dictionary* at 689 (1970) where "performance" is said to be "accomplishment, execution, carrying out, working out of anything ordered or undertaken; the doing of any action or work."

Courts have adopted these same concepts in case law where the term "performance" is used. For example, in *Tyro Industries, Inc. v. Trevose Constr. Co., Inc.,* 737 F.Supp. 856 (E.D.Pa.1990), where the term "performance" was used in a highway construction contract, the court said it meant "carrying out or doing the subject matter of the contract, in this case the construction of two reinforced earth walls." 737 F.Supp. at 862. Likewise, the New Jersey Supreme Court in *Legion Manor, Inc. v. Township of Wayne*, 49 N.J. 420, 424, 231 A.2d 201, 203 (1967), the court stated that "[p]erformance contemplates ... that the work be completed[.]"

Finally, the case of *Williams v. New Mexico State Highway Commission, supra,* offers some guidance as it involved a somewhat similar insurance policy. This policy had a basic exclusion of coverage "arising solely from the existence of or condition of highways[.]" The policy then exempted from this exclusion and gave coverage for "accidents arising out of construction, maintenance or repair operations[.]" [9]

The specific fact issue on coverage was whether the plaintiff who had been injured by striking a cow on the highway was covered. The plaintiff's contention was that a cattle guard located along the highway was defectively maintained. The New Mexico court was substantially assisted by another policy exclusion that dealt with "completed operations," a provision which is not argued in this case. The "completed operations" definition language was contained in several subsections, but essentially excluded coverage when the work to be performed had been completed. The New Mexico court concluded that because the cattle guard had been originally installed when the highway was built, the "completed operations" exclusion barred recovery.

In this case, while we have no "completed operations" language, we find no particular ambiguity in the term "performance [of] construction." The ordinary definition of this term would cover those activities that are associated with the construction from its inception to its end. The term cannot be limited to those accidents that occur only while the construction has some physical activity occurring and before the project is completed.

While it is not possible to define such a general phrase so as to automatically fit each accident that might occur during the "performance [of] construction," an obvious policy exclusion would occur where the performance of the construction work is ended, the job is completed, and construction personnel and the related tools and equipment are removed from the highway construction site and then the accident oc-

---

9. The text of the applicable exclusion and its exception in the *Williams* policy was:

"B. EXCLUSION OF HIGHWAYS

"It is agreed that the policy does not and shall not be construed to cover any liability arising solely from the existence of or condition of highways, streets, roads or other dedicated ways, including bridges, culverts and similar structures appurtenant thereto.

"This exclusion does not apply to accidents arising out of construction, maintenance or repair operations undertaken by or on behalf of the named insured." 82 N.M. at 552, 484 P.2d at 772.

curs, either through faulty workmanship or the general road conditions.

In this case, much of the work had apparently been done except for installation of the overhead warning sign. We cannot say that there was complete performance of construction because there was a portion of the work left to be done according to the project plans.

This result would be different if there were no plans to install the warning signs. A plaintiff may not widen the definition of project completion under the term "performance [of] construction" by having an expert testify that additional work was required to make the construction project safer. This would be adding to the scope of the "performance [of] construction" by including additional work not contemplated in the original project.

From the foregoing we conclude that the language contained in the WVDOH's liability insurance policy procured under W.Va. Code, 29–12–5(a), which provides coverage for bodily injury arising out of and occurring during the performance of construction on a state highway will cover a bodily injury occurring up until the completion of the highway construction project.[10] Such coverage provision does not relieve the plaintiff from proving negligence and proximate cause in order to recover for the bodily injury.

We, therefore, conclude that the trial court erred in holding as a matter of law that the policy language did not apply to the accident in question. For the foregoing

reasons, the judgment of the Circuit Court of Kanawha County is reversed and this case is remanded for further proceedings.

Reversed and remanded.

WORKMAN, C.J., dissents and reserves the right to file a dissenting opinion.

WORKMAN, Chief Justice, dissenting:

I must dissent. The State's insurance policy clearly and unambiguously provides for "bodily injury or property damage which arises out of and occurs during the performance or [sic] construction." Thus had this accident occurred during the performance of the act of erecting or placing the sign, or otherwise arose out of the *performance* of construction, then it would be covered under the policy.

This accident occurred during the use of this highway and the policy clearly provided this was not covered. Specifically, the policy provides that "the insurance afforded under this policy *does not apply* to the: ownership, maintenance, supervision, operation, *use* of [sic] control of streets, including ... highways or other public thoroughfares...." (emphasis added). The majority, however, goes to great lengths to find coverage by interpreting the policy language "arises out of and occurs during the performance ... [of] construction" to mean that there is coverage for a bodily injury which occurs up until the completion of the highway construction project even though no actual construction is being performed. This interpretation of the policy language was made even though this Court recently

---

**10.** We believe this holding is consistent with the legislative intent as set out in W.Va.Code, 29–12–1, which guides the State Board of Risk and Insurance Management:

"Recognition is given to the fact that the state of West Virginia owns extensive properties of varied types and descriptions representing the investment of vast sums of money; that the state and its officials, agents and employees engage in many governmental activities and services and incur and undertake numerous governmental responsibilities and obligations; that such properties are subject to losses, damage, destruction, risks and hazards and *such activities and responsibilities are subject to liabilities which can and should be covered by a sound and adequate insurance program;* and that good business and insur-

ance practices and principles necessitate the centralization of responsibility for the purchase, control and supervision of insurance coverage on all state properties, activities and responsibilities and the cooperation and coordination of all state officials, departments and employees in the development and success of such a centralized state insurance program. Wherefore, in order to accomplish these desired ends and objectives, the provisions of this article are hereby enacted into law in response to manifest needs and requirements therefor and in the interest of the establishment and development of an adequate, economical and sound state insurance and bonding service on all state property, activities and responsibilities." (Emphasis added).

interpreted this identical language in an inconsistent manner, while indicating that it was unambiguous. *Shrader v. Holland,* 186 W.Va. 687, 689, 414 S.E.2d 448, 450 (1992).

As much as one's sympathies are drawn to the Plaintiff–Appellant in his quest to be recompensed for his injuries, the insurance policy simply did not cover accidents occurring in connection with the *use* of the highway. This injury did not arise out of and occur during the performance of construction. While an insurer should be required to pay for a covered loss, it should not be required to pay under circumstances clearly and unambiguously not covered by the policy.