IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

September 2025 Term

_____

No. 24-347
_____

FILED

November 13, 2025

released at 3:00 p.m.
C. CASEY FORBES, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

ST. JOSEPH'S HOSPITAL OF BUCKHANNON, INC.,
Petitioner,

v.

STONEWALL JACKSON MEMORIAL HOSPITAL CO., and
WEST VIRGINIA HEALTH CARE AUTHORITY,
Respondents.

_____

Appeal from the Intermediate Court of Appeals of West Virginia
No. 23-ICA-265
(West Virginia Health Care Authority CON File #23-7-12659-X)

REVERSED AND REMANDED

_____

Submitted:  September 17, 2025
Filed: November 13, 2025

Albert F. Sebok, Esq.
Alaina N. Crislip, Esq.
Neil C. Brown, Esq.
Colton Koontz, Esq.
Jackson Kelly PLLC
Charleston, West Virginia
Counsel for Petitioner St. Joseph's
Hospital of Buckhannon, Inc.

Thomas G. Casto, Esq.
Webster J. Arceneaux, III, Esq.
Hannah K.W. Petros, Esq.
Lewis Gianola PLLC
Charleston, West Virginia
Counsel for Respondent Stonewall
Jackson Memorial Hospital Co.

John B. McCuskey, Esq.
Attorney General
Michael R. Williams, Esq.
Solicitor General
Frankie A. Dame, Esq.

Assistant Solicitor General
Charleston, West Virginia,
Counsel for Respondent West Virginia
Health Care Authority

CHIEF JUSTICE WOOTON delivered the Opinion of the Court.

**SYLLABUS BY THE COURT**

1. "Interpreting a statute or an administrative rule or regulation presents a purely legal question subject to *de novo* review." Syl. Pt. 1, A*ppalachian Power Co. v. State Tax Dep't of W. Va.*, 195 W. Va. 573, 466 S.E.2d 424 (1995).

2. "The judiciary is the final authority on issues of statutory construction, and we are obliged to reject administrative constructions that are contrary to the clear language of a statute." Syl. Pt. 5, *CNG Transmission Corp. v. Craig*, 211 W. Va. 170, 564 S.E.2d 167 (2002).

3. "The doctrine of *stare decisis* does not normally apply to administrative decisions." Syl. Pt. 5, *Chesapeake & Potomac Tel. Co. of W. Va. v. Pub. Serv. Comm'n of W. Va.*, 171 W. Va. 494, 300 S.E.2d 607 (1982).

4. "It is fundamental law that the Legislature may delegate to an administrative agency the power to make rules and regulations to implement the statute under which the agency functions. In exercising that power, however, an administrative agency may not issue a regulation which is inconsistent with, or which alters or limits its statutory authority." Syl. Pt. 3, *Rowe v. W. Va. Dep't of Corr.*, 170 W. Va. 230, 292 S.E.2d 650 (1982).

5. "The primary object in construing a statute is to ascertain and give effect to the intent of the Legislature." Syl. Pt. 1, *Smith v. State Workmen's Comp. Com'r*, 159 W. Va. 108, 219 S.E.2d 361 (1975).

6. "A statutory provision which is clear and unambiguous and plainly expresses the legislative intent will not be interpreted by the courts but will be given full force and effect." Syl. Pt. 2, *State v. Epperly*, 135 W. Va. 877, 65 S.E.2d 488 (1951).

7. In West Virginia Code section 16-2D-8(a)(1) (2023), the phrase "construction . . . of a health care facility" includes the erection or building of a structure for offering or providing health services.

WOOTON, Chief Justice:

The respondent, Stonewall Jackson Memorial Hospital Company ("Stonewall"), has plans to construct a new hospital complex and then move its existing operations to that new facility. The petitioner, St. Joseph's Hospital of Buckhannon, Inc. ("St. Joseph's"), asserts that Stonewall is required to obtain a certificate of need from the respondent West Virginia Health Care Authority ("the Authority") because West Virginia law mandates that healthcare providers obtain such a certificate for "[t]he construction . . . of a health care facility[.]" W. Va. Code § 16-2D-8(a)(1) (2023) ("Section 8(a)(1)").

Stonewall filed an application with the Authority asking whether it needed a certificate of need for its construction project. On July 12, 2023, the Authority issued a final decision finding that no certificate of need was required. The Authority reasoned that, despite Stonewall's proposal to construct a new health care facility, the Authority had an unwritten guideline that a certificate of need is unnecessary if a healthcare provider is merely "relocating" from an existing building to a newly constructed one. The Intermediate Court of Appeals of West Virginia ("ICA") affirmed the Authority's decision.

As set forth below, we find that both the Authority and the ICA erred in their interpretation of West Virginia's certificate of need statutes and that their respective decisions must be reversed. Under the clear and unambiguous language of Section 8(a)(1), the Legislature has mandated that health care entities must seek a certificate of need for the

1

construction of a new hospital building. Accordingly, we remand the case to the Authority for further proceedings consistent with the clear language of the statute.

## I. Factual and Procedural Background

St. Joseph's operates a twenty-five-bed hospital in rural Buckhannon, West Virginia. Since 2014, St. Joseph's has been designated as a "critical access hospital" or "CAH" by the federal Centers for Medicare & Medicaid Services. The CAH designation permits St. Joseph's to receive a higher reimbursement rate for Medicare and Medicaid patients, which in turn allows it to maintain financial stability.[1] For St. Joseph's to preserve its CAH status, it must operate its rural facility further than fifteen mountainous miles from other hospitals.[2]

---

[1] Before obtaining the 2014 CAH designation, St. Joseph's struggled financially and, apparently, faced closure. The CAH program was created by Congress in response to a rash of rural hospital closures during the 1980s and 1990s, and it was designed to reduce the financial vulnerability of rural hospitals and improve access to healthcare in rural communities. Hospitals with a CAH designation are reimbursed by Medicare (and, in many states, by Medicaid) based on the reasonable costs incurred to provide services; without the CAH designation, a hospital receives a fixed, predetermined amount for services under a prospective payment system. *See* 42 C.F.R. § 413.70 (2019) (payment for services). Within a year of receiving the CAH designation, St. Joseph's regained financial stability.

[2] Federal law establishes the distance requirement: a CAH designated facility must be "located more than a 35-mile drive (or, *in the case of mountainous terrain* or in areas with only secondary roads available, *a 15-mile drive*) from a hospital . . ." 42 USC § 1395i-4(c)(2)(B)(i) (2010) (emphasis added); *see also* 42 C.F.R. § 485.610(c)(1) (2023) (same).

Stonewall operates a hospital with seventy beds in Weston, West Virginia, about sixteen miles from the hospital operated by St. Joseph's. Stonewall's current hospital facility was built in 1972. It wants to construct a new, state-of-the-art hospital on Staunton Drive near the intersection of Interstate 79 and U.S. Highway 33, about four miles to the southeast of its current site. Stonewall asserts it considered alternatives to constructing a new hospital, such as renovations of the existing facility. However, Stonewall chose to build a new facility on the Staunton Drive site due to the current site's poor accessibility, constraints on expansion, and space and layout deficiencies. Stonewall projects that construction of the new hospital facility will cost about $56 million.

The site on which Stonewall proposes to build its new hospital is only about twelve mountainous miles away from the hospital operated by St. Joseph's. In 2021, Stonewall applied to the Authority to obtain a certificate of need for its plans to construct the new facility. St. Joseph's intervened and offered evidence that, if Stonewall is permitted to construct the new hospital facility less than fifteen mountainous miles from St. Joseph's, then St. Joseph's will lose its CAH status, and its future may be financially imperiled.

Based upon the parties' evidence, the Authority issued a decision on June 13, 2022, denying Stonewall's application for a certificate of need. The Authority found that Stonewall's construction of a new facility was not a "superior alternative," as required by certificate-of-need laws, because it would cause St. Joseph's to lose its CAH status to the significant detriment of St. Joseph's and the citizens that it serves. *See generally*, W. Va.

3

Code § 16-2D-12 (2016) (establishing minimum criteria for certificates of need). Stonewall appealed, but the ICA affirmed the Authority's decision denying the certificate of need. *Stonewall Jackson Mem'l Hosp. Co. v. St. Joseph's Hosp. of Buckhannon, Inc.*, No. 22-ICA-147, 2023 WL 4197305 (Ct. App. June 27, 2023) (memorandum decision). Stonewall did not appeal the ICA's decision.

However, in March 2023, while Stonewall's appeal of the 2022 certificate-of-need-denial decision was still pending before the ICA, the West Virginia Legislature adopted amendments to the statutes governing the certificate-of-need process. In one of those 2023 amendments, the Legislature altered the definition of the phrase "capital expenditure" that is used in several certificate-of-need statutes. Specifically, prior to the 2023 amendments, a certificate of need was required for certain specified capital expenditures made by or on behalf of a health care facility which exceeded $5 million; after the 2023 amendments, a certificate of need was required only for certain specified capital expenditures exceeding $100 million. *See* W. Va. Code § 16-2D-2(10) and (15) (2017 & 2023).[3]

---

[3] In 2017 the Legislature defined a "capital expenditure" as including, among other things, certain expenditures "made by or on behalf of a health care facility" and which exceed the "expenditure minimum," and it defined the "expenditure minimum" as costs "at and above $5 million[.]" *See* W. Va. Code §§ 16-2D-2(10)(A)(ii)(I), (15) (2017). In March 2023, the Legislature modified the definitions of "capital expenditure" and "expenditure minimum" to include certain costs "at and above $100 million[.]" *See* W. Va. Code §§ 16-2D-2(10)(A)(ii)(I), (15) (2023). Additionally, under West Virginia Code section 16-2D-3(a)(3) (2017), the Authority is required to apply "the DRI inflation index" and "adjust the

Continued . . .

4

Soon after the Legislature's passage of the 2023 amendments, Stonewall filed a "request for a determination of reviewability" ("RDOR") with the Authority. In an RDOR, a party "may make a written request to the [A]uthority for it to determine whether a proposed health service is subject to the certificate of need or exemption process." W. Va. Code § 16-2D-7 (2016). Stonewall argued that the RDOR was controlled by the Legislature's 2023 amendments to the definition of "capital expenditure" in the certificate-of-need laws. Essentially, because Stonewall's project was expected to cost less than $100 million, it asked the Authority for a ruling that a certificate of need was no longer required.

St. Joseph's again intervened and opposed Stonewall's RDOR, arguing to the Authority that Stonewall's proposal to construct a new hospital facility still required a certificate of need. St. Joseph's pointed out that Section 8(a)(1) mandates a certificate of need for "[t]he construction, development, acquisition, or other establishment of a health care facility[.]" W. Va. Code § 16-2D-8(a)(1). St. Joseph's argued that Stonewall admits that it intends to construct a new health care facility. Moreover, the words "capital expenditure" and "expenditure minimum" are not found in Section 8(a)(1). Hence, St.

_____

expenditure minimum annually," and the Authority's website notes that the capital expenditure minimum for 2025 is $107,637,600. *See* West Virginia Health Care Authority, https://hca.wv.gov/Pages/default.aspx (last visited November 13, 2025). We note that the Legislature again modified West Virginia Code section 16-2D-2 in 2024, but no changes were made affecting this appeal. *See* 2024 *Acts of the Legislature* ch. 149.

Joseph's insisted that Stonewall must obtain a certificate of need for its new hospital construction project, irrespective of Stonewall's capital expenditure.[4]

On July 12, 2023 (fifteen days after the ICA affirmed the Authority's 2022 decision denying Stonewall's application for a certificate of need), the Authority entered its final decision in favor of Stonewall's RDOR application, finding Stonewall did not need to apply for a certificate of need. The Authority characterized Stonewall's construction of a new hospital as nothing more than "the renovation, replacement and relocation of Stonewall from its current location to the proposed new location 4 miles away." In its RDOR decision, the Authority stated that it had an unwritten guideline for interpreting certificate-of-need statutes, such that it would not subject the "complete relocation of existing health care facilities within the same service area to [certificate-of-need] review

---

[4] St. Joseph's also asserted that the Authority had certificate-of-need jurisdiction over Stonewall's new hospital project because, in documents filed in the 2021 certificate-of-need proceeding, the project contemplated a substantial change to Stonewall's bed capacity. Section 8(a)(5) provides that a certificate of need is required for "[a] substantial change to the bed capacity of a health care facility with which a capital expenditure is associated[.]" W. Va. Code § 16-2D-8(5). A "substantial change" is one that "increases or decreases the bed capacity or relocates beds from one physical facility or site to another, but does not include a change by which a health care facility reassigns existing beds." W. Va. Code § 16-2D-2(45). St. Joseph's argued that Stonewall proposed that the new hospital facility would have twenty-nine beds, a forty-one-bed reduction (58.6%) from its current capacity, associated with Stonewall making a $56 million capital expenditure. The Authority rejected St. Joseph's argument on the ground that Stonewall proposed no such bed capacity reduction in the RDOR application. Before this Court, St. Joseph's renews its arguments that Stonewall's project requires a certificate of need because of the proposed reduction in bed capacity. We decline to reach these arguments because we resolve the case on other grounds.

6

unless the relocation would cost more than the [capital] expenditure minimum." Applying this unwritten guideline, the Authority found that Stonewall's $56 million project to construct a new hospital did not require a certificate of need because it was nothing more than Stonewall "relocat[ing] their entire hospital to a new location for a cost well below $100,000,000.00." The Authority's decision concludes:

> [T]he proposal by Stonewall . . . for the complete relocation of the hospital to a new location in its service area is NOT subject to Certificate of Need review because their project is a replacement and relocation of the same services, in the same service area, and does not exceed the [$100 million] minimum capital expenditure.

St. Joseph's appealed the July 2023 RDOR decision to the ICA, reiterating its argument that the plain language of Section 8(a)(1) requires a healthcare provider to obtain a certificate of need for the "construction . . . of a health care facility" irrespective of the $100 million capital expenditure limit. *St. Joseph's Hosp. of Buckhannon, Inc. v. Stonewall Jackson Mem'l Hosp. Co.*, 250 W. Va. 378, 385, 903 S.E.2d 247, 254 (Ct. App. 2024). While the ICA agreed that "Stonewall clearly plans to construct . . . a health care facility," the court found that Section 8(a)(1) was "ambiguous when applied to a relocation plan like Stonewall's." 250 W. Va. at 386, 903 S.E.2d at 255. While Section 8(a)(1) uses the disjunctive "or" and requires a certificate of need for the "construction, development, acquisition, *or* other establishment of a health care facility" (emphasis added), the ICA found the statute essentially applied to the construction, development, *and* establishment of a healthcare facility. 250 W. Va. at 386, 903 S.E.2d at 255. Moreover, the ICA

7

interpreted Section 8(a)(1)'s use of the term "establishment" as encompassing "the characteristic of newness[.]" 250 W. Va. at 386, 903 S.E.2d at 255. Since Stonewall was an existing healthcare entity, and not a newly established one, the ICA found that the Authority's conclusion that Section 8(a)(1) did not apply to the relocation of an existing healthcare entity's operations from an old facility to a newly constructed facility "is a reasonable interpretation of the statute[.]" 250 W. Va. at 387, 903 S.E.2d at 256. Accordingly, the ICA affirmed the Authority's decision that Stonewall did not need a certificate of need for its project to construct a new hospital.

St. Joseph's now appeals the ICA's opinion affirming the Authority's RDOR final decision.

## II. Standard of Review

In its appeal, St. Joseph's asks this Court to interpret Section 8(a)(1). "Interpreting a statute or an administrative rule or regulation presents a purely legal question subject to *de novo* review." Syl. Pt. 1, *Appalachian Power Co. v. State Tax Dep't of W. Va.*, 195 W. Va. 573, 466 S.E.2d 424 (1995). "The judiciary is the final authority on issues of statutory construction, and we are obliged to reject administrative constructions that are contrary to the clear language of a statute." Syl. Pt. 5, *CNG Transmission Corp. v. Craig*, 211 W. Va. 170, 564 S.E.2d 167 (2002).

Moreover, because the appeal challenges an agency decision in a contested case that is subject to the State Administrative Procedures Act, W. Va. Code §§ 29A-5-1 to -5, the Authority's decision is subject to judicial review under the standard of review set forth in West Virginia Code section 29A-5-4(g) (2021), which provides:

> The court may affirm the order or decision of the agency or remand the case for further proceedings. It shall reverse, vacate, or modify the order or decision of the agency if the substantial rights of the petitioner or petitioners have been prejudiced because the administrative findings, inferences, conclusions, decision, or order are:
>
> (1) In violation of constitutional or statutory provisions;
>
> (2) In excess of the statutory authority or jurisdiction of the agency;
>
> (3) Made upon unlawful procedures;
>
> (4) Affected by other error of law;
>
> (5) Clearly wrong in view of the reliable, probative, and substantial evidence on the whole record; or
>
> (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

### III. Discussion

West Virginia Code section 16-2D-8 contains numerous subsections listing a variety of proposed health-related services that require a certificate of need. St. Joseph's central argument focuses on one such subsection, Section 8(a)(1), which provides:

> (a) . . . [T]he following proposed health services may not be acquired, offered, or developed within this state except upon approval of and receipt of a certificate of need as provided by this article:

9

(1) The construction, development, acquisition, or other establishment of a health care facility[.][5]

On appeal, St. Joseph's reasserts that Section 8(a)(1) is unambiguous and clearly requires that a provider obtain a certificate of need from the Authority for the construction of a health care facility, such as a new hospital. As for the term "construction," St. Joseph's argues that this Court has already afforded that term its ordinary, dictionary meaning:

> In Webster's Third New International Dictionary at 489, "construction" is defined as "the act of putting parts together to form a complete integrated object." In II(C) *The Oxford English Dictionary* at 880 (1970), "construction" is stated as "[t]he action of framing, devising, or forming, by putting together of parts; erection, building."

*Eggleston v. W. Va. Dep't of Highways*, 189 W. Va. 230, 234, 429 S.E.2d 636, 640 (1993). Regarding the phrase "health care facility," West Virginia Code section 16-2D-2(16) defines the phrase as "a publicly or privately owned facility, agency or entity that offers or provides health services, whether a for-profit or nonprofit entity and whether or not licensed, or required to be licensed, in whole or in part[.]" St. Joseph's points out that this definition of facility encompasses a brick-and-mortar building as well as a person,

---

[5] Section 8(a)(1) does not contain the phrase "capital expenditure," nor does it make reference to the $100 million "expenditure minimum," both phrases that are defined in West Virginia Code §§ 16-2D-2(10) and (15). The parties wisely do not ask us to read into Section 8(a)(1) any such expenditure requirements, because "courts must read the relevant law according to its unvarnished meaning, without any judicial embroidery." Syl. Pt. 3, in part, *W. Va. Health Care Cost Rev. Auth. v. Boone Mem'l Hosp.*, 196 W. Va. 326, 472 S.E.2d 411 (1996).

organization, business, or other entity. Hence, under Section 8(a)(1), St. Joseph's argues that Stonewall was required to obtain a certificate of need for its project to erect a new building to house its hospital. St. Joseph's asks that we reverse the Authority's decision finding otherwise.[6]

Before this Court, the Authority has altered its position, and it now joins St. Joseph's in arguing that its own final RDOR decision interpreting Section 8(a)(1), as well as the opinion of the ICA, should be reversed. In the ICA proceedings, the Authority argued that its unwritten guideline was a fair interpretation of Section 8(a)(1). But to this Court, the Authority admits that it erred, stating that while its unwritten guideline might have reflected a good-faith effort to reasonably apply the certificate-of-need statutes, that guideline does not have an appropriate statutory basis. Moreover, the Authority contends that the ICA ignored or misapplied the syntax of Section 8(a)(1) to interpret the word "establishment" and insert a "new entity" requirement into the statute. The Authority

---

[6] As noted earlier, the ICA found Section 8(a)(1) to be ambiguous. To resolve that ambiguity, in part, the ICA employed *Chevron* deference to the Authority's unwritten relocation guideline. *See generally*, *Appalachian Power Co.*, 195 W. Va. at 578, 466 S.E.2d at 429, Syl. Pts. 2 and 3 (adopting *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837 (1984)). After the ICA released its opinion, the United States Supreme Court overruled *Chevron* in *Loper Bright Enters. v. Raimondo*, 603 U.S. 369 (2024), and St. Joseph's argues that this Court should follow suit and overrule *Appalachian Power* and its progeny. Because we agree with St. Joseph's and the Authority's position that Section 8(a)(1) is clear and unambiguous, and because no formal written agency rule or Legislature-approved regulation is at issue, we need not address any arguments regarding the continuing validity of *Chevron*-like deference to an agency rule interpreting an ambiguous statute in West Virginia's jurisprudence.

11

argues that this Court should reject the Authority's earlier interpretation and the ICA's interpretation of Section 8(a)(1), find the statute to be unambiguous, and find that Stonewall's plan to construct a new hospital requires a certificate of need.

Stonewall, however, continues to maintain that its new hospital construction project does not require a certificate of need, arguing that Section 8(a)(1) only applies to a newly established health care entity constructing a building, and Stonewall is a long-established health care entity. Furthermore, Stonewall relies upon the Authority's unwritten guideline interpreting Section 8(a)(1) and argues in its brief that "[t]he complete relocation of existing health care facilities has never been subject to certificate of need review unless the relocation would cost more than the [capital] expenditure minimum." Stonewall complains that it is unfair that the Authority has changed its position, insists that this Court must give deference and "statutory stare decisis" effect to the Authority's past administrative decisions applying the unwritten guideline, and asks that we affirm the ICA's and the Authority's decisions below.

We reject Stonewall's position. It is long-established law in this State that "[t]he doctrine of *stare decisis* does not normally apply to administrative decisions." Syl. Pt. 5, *Chesapeake & Potomac Tel. Co. of W. Va. v. Pub. Serv. Comm'n of W. Va.*, 171 W. Va. 494, 300 S.E.2d 607 (1982); *accord Cent. W. Va. Refuse, Inc. v. Pub. Serv. Comm'n of W. Va.*, 190 W. Va. 416, 420, 438 S.E.2d 596, 600 (1993) ("[T]he doctrine of stare decisis does not generally apply to regulatory decisions by administrative agencies."). We

12

have recognized that when an agency is taking regulatory action, the "agency must at all times be free to take such steps as may be proper in the circumstances, irrespective of the past decisions. . . . Even when conditions remain the same, the administrative understanding of those conditions may change, and the agency must be free to act. . . ." *Chesapeake & Potomac Tel.*, 171 W. Va. at 500, 300 S.E.2d at 613 (quoting 2 K. Davis, Administrative Law § 18.09 (1958)). Furthermore,

> [i]t is fundamental law that the Legislature may delegate to an administrative agency the power to make rules and regulations to implement the statute under which the agency functions. In exercising that power, however, an administrative agency may not issue a regulation which is inconsistent with, or which alters or limits its statutory authority.

Syl. Pt. 3, *Rowe v. W. Va. Dep't of Corr.*, 170 W. Va. 230, 292 S.E.2d 650 (1982). Hence, the Authority is free to abandon its earlier unwritten guideline for interpreting the certificate-of-need statutes, particularly where, as here, the Authority becomes cognizant that its prior interpretation is inconsistent with or limits its statutory authority, and "goes beyond the meaning that the statute can bear." *In re Snuffer*, 193 W. Va. 412, 417, 456 S.E.2d 493, 498 (1995) (Cleckley, J., concurring) (citing *Pittston Coal Grp. v. Sebben*, 488 U.S. 105, 113 (1988) ("In our view, the statute simply will not bear the meaning the [agency] has adopted.")).[7]

---

[7] Furthermore, it appears that Stonewall is misusing the phrase "statutory stare decisis" in its arguments. Stated generally, under the doctrine of statutory stare decisis, agency interpretations of statutes do not have stare decisis effects on courts. Once this Court determines a statute's meaning, it will seek to adhere to that determination in future

Continued . . .

13

Our guiding principles in interpreting Section 8(a)(1) are simple. "The primary object in construing a statute is to ascertain and give effect to the intent of the Legislature." Syl. Pt. 1, *Smith v. State Workmen's Comp. Comm'r*, 159 W. Va. 108, 219 S.E.2d 361 (1975); *accord* Syl. Pt. 8, *Vest v. Cobb*, 138 W. Va. 660, 76 S.E.2d 885 (1953) ("The primary rule of statutory construction is to ascertain and give effect to the intention of the Legislature."). However, "[a] statutory provision which is clear and unambiguous and plainly expresses the legislative intent will not be interpreted by the courts but will be given full force and effect." Syl. Pt. 2, *State v. Epperly*, 135 W.Va. 877, 65 S.E.2d 488 (1951). In other words, "[w]here the language of a statutory provision is plain, its terms should be applied as written and not construed." *DeVane v. Kennedy*, 205 W. Va. 519, 529, 519 S.E.2d 622, 632 (1999); *accord* Syl. Pt. 5, *State v. General Daniel Morgan Post No. 548, V.F.W.*, 144 W. Va. 137, 107 S.E.2d 353 (1959) ("When a statute is clear and unambiguous and the legislative intent is plain, the statute should not be interpreted by the courts, and in such case it is the duty of the courts not to construe but to apply the statute.").

Moreover, in cases such as this, where the Legislature has chosen not to define a term within a statutory scheme, we follow our longstanding rule that "[u]ndefined

---

cases. An agency's later interpretation of the statute is not entitled to deference but will instead be measured against this Court's prior determination of the statute's meaning. *Appalachian Power Co.*, 195 W. Va. at 588 n.17, 466 S.E.2d at 439 n.17; *see also Jenkins v. City of Elkins*, 230 W. Va. 335, 341, 738 S.E.2d 1, 7 (2012) ("[A]dherence to prior decisions of this Court, and the consistency among the rulings of this Court that necessarily results therefrom, is particularly warranted when those prior decisions involve a matter of statutory construction.").

14

words and terms used in a legislative enactment will be given their common, ordinary and accepted meaning." Syl. Pt. 6, in part, *State ex rel. Cohen v. Manchin*, 175 W. Va. 525, 336 S.E.2d 171 (1984); *accord Gen. Daniel Morgan Post No. 548*, 144 W. Va. at 137, 107 S.E.2d at 354, Syl. Pt. 4 ("Generally the words of a statute are to be given their ordinary and familiar significance and meaning, and regard is to be had for their general and proper use.").

We find that the meaning of the phrase "construction . . . of a health care facility," as that phrase is used in Section 8(a)(1), is clear and unambiguous. Regarding the word "construction," we have already noted that the common, ordinary meaning of the word is "[t]he action of framing, devising, or forming, by putting together of parts; erection, building." *Eggleston*, 189 W. Va. at 234, 429 S.E.2d at 640 (quoting *Oxford English Dictionary* (2d ed. 1989)). While the Legislature has not defined "construction" within the certificate-of-need statutes,[8] it has done so within statutes regulating bidding on

---

[8] We note that other states have adopted definitions for "construction" in their certificate-of-need statutes or regulations, and they have interpreted the term in a common-sense manner that encompasses both the erection of new structures and the substantial modification of existing structures which are intended for the provision of health services. *See, e.g.,* 12 Va. Admin. Code § 5-220-10 (2008) ("'Construction' means the building of a new medical facility or the expansion, remodeling, or alteration of an existing medical care facility."); N.J. Admin. Code § 8:33-1.3 (2022) (defining "construction" as "the erection, building, alteration, reconstruction, improvement, renovation, extension or modification of a health care facility[.]"); Alaska Stat. § 18.07.111 (2022) (construction means "the erection, building, alteration, reconstruction, improvement, extension, or modification of a health care facility under this chapter[.]").

government construction contracts. In West Virginia Code section 5-22-3 (c)(1) (2015), the Legislature adopted the following meaning for the term:

> "Construction" means the act, trade or process of building, erecting, constructing, adding, repairing, remodeling, rehabilitating, reconstructing, altering, converting, improving, expanding or demolishing of a building, structure, facility, road or highway, and includes the planning, designing and financing of a specific construction project.

Hence, in Section 8(a)(1), the common, ordinary, and accepted meaning for the term "construction" includes activities such as the erection, building, alteration, remodeling, reconstruction, improvement, renovation, extension, or modification of a structure.

The other term at issue in Section 8(a)(1), "health care facility," is defined in the certificate-of-need statutes as "a publicly or privately owned facility . . . that offers or provides health services[.]" W. Va. Code § 16-2D-2(16). To the extent that Stonewall claims that statutory definition does not encompass a physical structure, we note that a commonly accepted meaning of "facility" is a building or a place for doing an activity – in this case, for providing health services – and that meaning becomes especially clear when viewed in the context of the word "construction" in Section 8(a)(1). *See Cambridge Advanced Learner's Dictionary* (4th ed. 2013) ("a place, especially including buildings, where a particular activity happens"); *New Oxford American Dictionary* (5th ed. 2010) ("an establishment set up to fulfill a particular function or provide a particular service, typically an industrial or medical one"); *Merriam-Webster Collegiate Dictionary* (11th ed. 2005) ("something (as a hospital) that is built, installed, or established to serve a particular

16

purpose"). The term "health services," when used in the certificate-of-need statutes, means "clinically related preventive, diagnostic, treatment or rehabilitative services[.]" W. Va. Code § 16-2D-2(18).

Given the plain meaning of the relevant terms, and in the context of this case, we hold that in West Virginia Code section 16-2D-8(a)(1) (2023), the phrase "construction . . . of a health care facility" includes the erection or building of a structure for offering or providing health services.

In the instant case, it is undisputed that Stonewall's plans include the erection of a new hospital building for the provision of health services for its patients. Section 8(a)(1), by its clear and unambiguous terms, required Stonewall to seek a certificate of need from the Authority for its new hospital project. Both the Authority and the ICA erred by finding Section 8(a)(1) to be ambiguous and by applying the Authority's unsupportable, unwritten guideline that the relocation of services from an old building to a newly erected one is exempt from the certificate-of-need requirement. Stated simply, on this record, the Authority exceeded its statutory authority in its RDOR assessment that Stonewall's new hospital construction project did not require certificate-of-need review.

## IV. Conclusion

Accordingly, we reverse the ICA's opinion and reverse the Authority's July 12, 2023, final decision. The case is remanded to the Authority for proceedings consistent with this opinion.

Reversed and remanded.